In re Christopher Dwayne LARCH;
Frederick Rocky Larch.

EASTERN BAND OF CHEROKEE
INDIANS; Frederick Wilfred
Larch, Plaintiffs–Appellants,

v.

Ina Quinn LARCH, Defendant–Appellee.

No. 88–1116.

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 9, 1989.

Decided April 7, 1989.

Ben Oshel Bridgers (Charles G. King, Haire & Bridgers, P.A., on brief) for plaintiffs-appellants.

(John M. Olesiuk, Devere C. Lentz, Jr., P.A.; Ervin L. Ball, Jr., Ball, Kelley &

Arrowood, P.A., on brief), for defendant-appellee.

Before CHAPMAN, Circuit Judge, BUTZNER, Senior Circuit Judge, and MOTZ, United States District Judge for the District of Maryland, sitting by designation.

BUTZNER, Senior Circuit Judge:

The Eastern Band of Cherokee Indians, a federally recognized Indian tribe, and Frederick Larch, a member of the tribe (collectively the Tribe), appeal from the district court's denial of their petition for a writ of habeas corpus. Their petition seeks the return of two Indian children removed from the Cherokee reservation under a North Carolina state court's custody order.

The district court dismissed the petition, on the grounds that it lacked jurisdiction, and that, regardless of jurisdiction, the Tribe had failed to state a cause of action. We believe that the district court had jurisdiction to entertain the action but that the Tribe failed to state a claim upon which relief could be granted. On that basis, we affirm.

## I

Larch and his former wife, Ina Quinn Larch, who is not a member of the tribe, were divorced by consent judgment in a North Carolina state court in 1983, and that court granted custody of their two children, who are members of the tribe, to Mrs. Larch. In 1987, Larch obtained an order from the Cherokee Indian Court granting him custody of the two children, and he brought the children from his wife's residence to live with him on the Cherokee reservation. Mrs. Larch then sought enforcement of her 1983 state court custody decree. The North Carolina state court issued an "Immediate Custody Order," modifying its 1983 decree by giving immediate sole custody of the children to Mrs. Larch. Enforcing this order, the sheriff of Buncombe County, North Carolina, removed the children from the Cherokee reservation and returned them to her. The Cherokee court then ordered that the children were wards of court, and Larch and the Tribe filed this habeas corpus petition in the federal district court.

## II

The Tribe asserts that the district court had jurisdiction under 28 U.S.C. § 1362, which provides:

The district courts shall have original jurisdiction of all civil actions, brought by any Indian tribe or band with a governing body duly recognized by the Secretary of the Interior, wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States.

The "arises under" language in section 1362 resembles the language of the general federal question jurisdictional grant in 28 U.S.C. § 1331. "[T]he scope of matters arising 'under the Constitution, laws, or treaties of the United States' should be at least as broad under § 1362 as under § 1331." *Mescalero Apache Tribe v. Burgett Floral Co.*, 503 F.2d 336, 338 (10th Cir.1974) (footnote omitted).

"A suit arises under the law that creates the cause of action." *American Well Works v. Layne & Bowler Co.*, 241 U.S. 257, 260, 36 S.Ct. 585, 586, 60 L.Ed. 987 (1916). The Tribe claims several federal sources for their cause of action. Its petition for relief under 28 U.S.C. § 2254 is, of course, federal on its face. The essence of its complaint is that the Buncombe County sheriff and the North Carolina state court impermissibly trenched upon the jurisdiction of the Cherokee Indian Court by failing to honor its 1987 custody order. The Supreme Court has held that disputes over the scope of Indian tribal court jurisdiction raise a federal question, and federal district courts have jurisdiction over such disputes. *See National Farmers Union Ins. Co. v. Crow Tribe*, 471 U.S. 845, 851–53, 105 S.Ct. 2447, 2451–52, 85 L.Ed.2d 818 (1985).

Accordingly, the district court had jurisdiction over the Tribe's claim. "Federal question jurisdiction exists unless the cause of action alleged is patently without merit, (citation omitted), or the allegation is clear-

ly immaterial and made solely for the purpose of obtaining jurisdiction. (citation omitted)" *Thompson v. Thompson,* 798 F.2d 1547, 1550 (9th Cir.1986), *aff'd* 484 U.S. 174, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988). The Tribe's complaint satisfies that relatively low jurisdictional threshold, because "the court must assume jurisdiction to decide whether the allegations state a cause of action on which the court can grant relief." *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946).

In *Bell,* the Supreme Court explained: Jurisdiction, therefore, is not defeated, as respondents seem to contend, by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover. For it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction. Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy. If the court does later exercise its jurisdiction to determine that the allegations in the complaint do not state a ground for relief, then dismissal of the case would be on the merits, not for want of jurisdiction.

327 U.S. at 682, 66 S.Ct. at 776. The district court had jurisdiction over the Tribe's claim under section 1362.

### III

Mrs. Larch contends that the North Carolina state court is the proper forum for child custody disputes with her former husband under the Parental Kidnapping Prevention Act, 28 U.S.C. § 1738A (PKPA). The PKPA provides that a custody order entered by a state court with jurisdiction, where the court is in the "home state" of the child who is the subject of the order, is owed full faith and credit by the courts of other states. The PKPA also provides for the continuing jurisdiction of a state court once it has entered a proper custody order. 28 U.S.C. § 1738A(d). Mrs. Larch argues

that, under the PKPA, the tribal court owes full faith and credit to the North Carolina court orders. The Tribe contends that the PKPA is inapplicable because Congress did not expressly include Indian tribes in the definition of a "state" bound by the PKPA.

■ We have jurisdiction under 28 U.S. C. § 1362 to construe the PKPA to determine whether a tribal court is embraced by the term "appropriate authorities of every State" who must give full faith and credit to the custody decrees of another state. *See* 28 U.S.C. § 1738A(a). Congress included United States territories in its definition of "states" whose courts owe full faith and credit to custody decrees of other states and territories under the PKPA. *See* 28 U.S.C. § 1738A(b)(8). There is authority that Indian courts owe full faith and credit to state court judgments on the same basis as do territorial courts. *See* F. Cohen, *Handbook of Federal Indian Law* 384–85 (2d ed. 1982); *cf. Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 65 n. 21, 98 S.Ct. 1670, 1681 n. 21, 56 L.Ed.2d 106 (1978) (Indian court judgments entitled, in some circumstances, to full faith and credit from other courts); *Raymond v. Raymond,* 83 F. 721, 724 (8th Cir.1897) (Indian tribes analogous to states in analysis of sovereignty and jurisdiction). We therefore conclude that the Cherokee tribe is a "state" as defined by section 1738A(b)(8) for the purpose of the PKPA and that it is entitled to the benefits conferred by the Act and subject to its obligations.

■ Nevertheless, because there is no private cause of action under the PKPA, we have no jurisdiction to choose between competing custody orders. *See Thompson v. Thompson,* 484 U.S. 174, 108 S.Ct. 513, 518–20, 98 L.Ed.2d 512 (1988). State courts, including by definition territorial and tribal courts, are themselves responsible for enforcing the PKPA by abstaining from taking jurisdiction over a custody dispute while another state court has jurisdiction. *See* 108 S.Ct. at 517–20. Citing *Thompson,* the district court quite properly did not undertake to enforce the PKPA.

## IV

The Tribe asserts that it is entitled to habeas relief because the return of the two children to Larch is necessary to vindicate the jurisdiction that the Cherokee Indian Court is empowered to exercise. In support of its argument that this custody dispute should be resolved by the tribal court, the Tribe relies on the general federal policy acknowledging Indian sovereignty and on the Indian Child Welfare Act, 25 U.S.C. §§ 1901–1963.

Except for the Indian Child Welfare Act, none of the federal statutes or decisions cited by the Tribe are directly relevant to its petition. The Tribe correctly states that the Act provides for exclusive tribal jurisdiction in most custody proceedings involving an Indian child. *See* 25 U.S.C. § 1911(a).[1] The Tribe also correctly states that its judicial proceedings are entitled to full faith and credit. *See* 25 U.S.C. § 1911(d).[2]

The difficulty with the Tribe's position is that the meaning of the term "child custody proceeding" in section 1911(a), on which the Tribe relies, is restricted by section 1903(1). After defining "child custody proceeding" to include foster care, termination of parental rights, and adoption, section 1903(1) provides: "Such term or terms shall not include a placement based upon an act which, if committed by an adult, would be deemed a crime or upon an award, in a divorce proceeding, of custody to one of the parents." This statutory exclusion clearly indicates that a state court may lawfully award custody of an Indian child to a non-Indian parent in a divorce proceeding. The Act does not confer exclusive jurisdiction on either a tribal court or a state court to award custody of children in a divorce proceeding. Rather, the Act discloses that Congress recognized that there can be concurrent jurisdiction in state and tribal courts. *Cf. Sanders v. Robinson,* 864 F.2d 630, 633 (9th Cir.1988).[3]

Because the Indian Child Welfare Act does not confer exclusive jurisdiction on the tribal court to award custody of a child in a divorce proceeding, the Act affords no basis for granting the writ of habeas corpus that the tribe seeks. On that ground, the district court's denial of the writ is affirmed.

AFFIRMED.

---

**1.** 25 U.S.C. § 1911(a) provides:

An Indian tribe shall have jurisdiction exclusive as to any State over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe, except where such jurisdiction is otherwise vested in the State by existing Federal law. Where an Indian child is a ward of a tribal court, the Indian tribe shall retain exclusive jurisdiction, notwithstanding the residence or domicile of the child.

**2.** 25 U.S.C. § 1911(d) provides:

The United States, every State, every territory or possession of the United States, and every Indian tribe shall give full faith and credit to the public acts, records, and judicial proceedings of any Indian tribe applicable to Indian child custody proceedings to the same extent that such entities give full faith and credit to the public acts, records, and judicial proceedings of any other entity.

**3.** Section 2 of Ordinance 328 of the Eastern Band of the Cherokee Indians confers on the tribal court jurisdiction to grant divorces of individuals living on the reservation where one of the spouses is an Indian. The record does not disclose where the Larches lived when the state court entered its decree of divorce and custody. In any event it is clear that the tribal court never exercised its jurisdiction to divorce them.