## CIRCUIT COURT OF THE CITY OF NORFOLK

Dominick J. Blandino

v.

Kerry M. L. Blandino

October 6, 1999

Chancery No. C99-1249

BY JUDGE EVERETT A. MARTIN, JR.

On July 21, 1999, Dominick Blandino (husband) filed a bill of complaint for a divorce from Kerry M. L. Blandino (wife) on the grounds of desertion. In the bill he seeks custody of their child, and he alleges, *inter alia*, that the parties were married on May 25, 1995, in Jacksonville, Florida; that the one child of the marriage was born on November 9, 1995; that he and his wife are domiciled and have been *bona fide* residents of Virginia for more than six months preceding the commencement of the suit; that the parties last cohabited in Norfolk, Virginia; that his wife deserted him on July 20, 1999, taking the child and leaving a writing stating she and the child were going to North Dakota; that the child has resided at two Virginia addresses "for the last five years," the language of the quoted phrase being required by Code of Virginia § 20-132(A).

On July 28, 1999, the Standing Rock Tribal Court entered an order giving the wife temporary custody of the child. The order recited that the wife had been a resident of Standing Rock for over thirty days. On August 2, 1999, the wife was personally served with a copy of the bill of complaint. The affidavit of service recites that the process server was not related to the parties or

counsel; that he had no interest in the suit; and that he was older than eighteen. On August 6, 1999, the wife filed a special appearance to object to jurisdiction and a motion to quash service. She states in her special appearance that she is an enrolled member of the Standing Rock Sioux; that she resides on the reservation; that she was served with the bill of complaint on the reservation; and that the child is eligible for enrollment in the Standing Rock Sioux.

This Court has subject matter jurisdiction of the suit under Virginia law. Code of Virginia §§ 20-96, 20-97, 20-107.2. The wife's move to North Dakota does not defeat personal jurisdiction over her, Code of Virginia § 8.01-328.1(A)(9), and service of process on her in North Dakota was proper under Virginia law. Code of Virginia § 8.01-320. The removal of the child to North Dakota would not ordinarily affect this Court's jurisdiction over the child's custody. Code of Virginia § 20-126(A)(1)(ii), (C).

### *Jurisdiction*

The wife claims this Court has no jurisdiction over this suit as she and the child are Indians residing on a reservation. The U.S. Supreme Court has frequently held that Art. I, § 8, cl. 9, of the federal Constitution gives Congress plenary power over relations with Indian tribes. Federal law governing the extent of state authority over Indian tribes is ill-defined. It is found in statutes, treaties, case decisions, executive orders, and administrative rulings. Counsel have not cited any treaty, executive order, or administrative ruling that applies here, so I assume that federal statutes and cases are the only controlling authorities.

Early in the history of the Republic the U.S. Supreme Court held that state laws had no force on Indian reservations unless the Indians consented to state authority or the state authority was exercised in conformity with treaties or federal statutes. In *Worcester* v. *Georgia*, 31 U.S. (6 Pet.) 515 (1832), Chief Justice Marshall wrote:

> The Cherokee nation . . . is a distinct community, occupying its own territory . . . in which the laws of Georgia can have no force, and which the citizens of Georgia have no right to enter, but with the assent of the Cherokees themselves, or in conformity with treaties, and with the acts of congress. The whole intercourse between the United States and this nation, is, by our constitution and laws, vested in the government of the United States.

6 Pet. at 561.

*Worcester* has never been overruled, but more recent cases do not express the limit on state authority in such clear and absolute terms. In *Williams* v. *Lee*, 358 U.S. 217 (1959), Lee, a non-Indian, operated a store on an Indian Reservation. The Williamses, Navajo Indians living on the reservation, had apparently not paid for some merchandise they purchased at Lee's store. Lee sued them in an Arizona court. The U.S. Supreme Court held the Arizona court had no jurisdiction. After citing the above quoted passage from *Worcester*, the Court held:

> Over the years this Court has modified these principles in cases where essential tribal relations were not involved and where the rights of Indians would not be jeopardized, but the basic policy of *Worcester* has remained . . . Essentially, absent governing Acts of Congress, the question has always been whether the state action infringed on the right of reservation Indians to make their own laws and be ruled by them.

358 U.S. at 219-20.

The Court there also noted the immateriality of one of the parties not being an Indian because the transaction at issue occurred on a reservation. 358 U.S. at 223.

In *Fisher* v. *District Court*, 424 U.S. 382 (1976), the U.S. Supreme Court reversed a judgment of the Supreme Court of Montana that had held Montana's courts had jurisdiction over an adoption proceeding in which all parties were Indians residing on the reservation. The Court noted that if state court jurisdiction infringed on Indian self-government under the facts of *Williams* v. *Lee*, state courts should have no jurisdiction in a case arising on the reservation when all parties were Indians. 424 U.S. at 386. Since the *Fisher* decision, Congress has provided for the adoption of Indian children in the Indian Child Welfare Act. 28 U.S.C. § 1901 *et seq.*

Counsel for the wife has cited the spirit of this Act, but the Act does not apply to this case. Section 1911(a) gives Indian tribes exclusive jurisdiction "over any child custody proceeding involving an Indian child who resides . . . within the reservation of such tribe" except where federal law otherwise gives the state courts jurisdiction. However, a "child custody proceeding" is defined by 28 U.S.C. § 1903(1) to mean foster care placements, termination of parental rights proceedings, and adoptions. By its own terms, the definition explicitly excludes "a placement based upon . . . an award, in a divorce proceeding, of custody to one of the parents." I find that by necessary implication these statutes give state and tribal courts concurrent jurisdiction

over the determination of the custody of Indian children in divorce proceedings. The Court of Appeals for the Fourth Circuit so held in *In re Larch*, 872 F.2d 66 (4th Cir. 1989).

There, the parents were divorced in a North Carolina court. The divorce decree granted custody of the children to the mother, a non-Indian. The children and the father were members of the Cherokee tribe. Four years after the divorce, the father obtained a custody order from the Cherokee Indian Court, and he took the children from the mother's home to the reservation. The mother then had her custody order enforced by having a North Carolina deputy sheriff enter the reservation and return the children to her. The father and the Cherokee tribe filed a writ of habeas corpus in U.S. District Court claiming that the custody dispute should be resolved in the tribal court relying "on the general federal policy acknowledging Indian sovereignty and the Indian Child Welfare Act." 872 F.2d at 69. In construing 28 U.S.C. § 1903(1), the Court held:

> This statutory exclusion clearly indicates that a state court may lawfully award custody of an Indian child to a non-Indian parent in a divorce proceeding. The Act does not confer exclusive jurisdiction on either a tribal court or a state court to award custody of children in a divorce proceeding. Rather, the Act discloses that Congress recognized that there can be concurrent jurisdiction in state and tribal courts.

872 F.2d at 69.

I further conclude that even in the absence of 28 U.S.C. §§ 1903(1) and 1911(a), a state court's jurisdiction over a custody proceeding between an Indian and a non-Indian would not violate the rule established in *Williams* v. *Lee*, *supra*, where, as here, the parents married and cohabited off the reservation and the child was born and raised off the reservation until their separation. See also *LeClair* v. *Powers*, 632 P.2d 370 (Okla. 1981); *Harris* v. *Young*, 473 N.W.2d 141 (S.D. 1991). The cases the wife relies on do not involve custody disputes between parents incidental to or after a divorce and are therefore distinguishable.

### Full Faith and Credit

The Court of Appeals in *Larch* also held that an Indian tribe is subject to the Parental Kidnapping Prevention Act, 28 U.S.C. § 1738A, as it is a "state" as defined in subsection (b)(8). 872 F.2d at 68. Subsection (a) of that statute

requires this Court to enforce the Standing Rock Tribal Court's "custody determination" if it was "made consistently with the provisions of this section." A temporary custody order is a "custody determination." § 1738A(b)(3). However, the temporary custody order was not made consistently with the provisions of the section, as provided in subsection (c), because Virginia is the child's home state, § 1738A(b)(4), and the courts of Virginia have jurisdiction. Furthermore, the wife has made no claim of emergency. Thus the Standing Rock Tribal Court's temporary custody order is not entitled to full faith and credit. I further believe that subsection (g) disposes of the wife's claim that the husband should be required to exhaust his tribal court remedies.

## Service of Process

Relying on *Francisco* v. *State*, 113 Ariz. 427, 556 P.2d 1 (1976), and *Bradley* v. *Deloria*, 587 N.W.2d 591 (S.D. 1998), wife claims that service of process on her by a North Dakota deputy sheriff is invalid as it occurred on an Indian Reservation. *Francisco* does so hold, although the holding is largely based on Arizona's failure to enact certain enabling legislation required by federal statute. However, in *Dixon* v. *Picopa Construction Co.*, 160 Ariz. 251, 772 P.2d 1104 (1989), the Arizona Supreme Court distinguished *Francisco*, and it treated Indian reservations as separate states for purposes of service of process. Process served on an Indian on a reservation in a manner authorized by the Arizona long-arm statute was sufficient to give the state court jurisdiction. 772 P.2d at 1113. The South Dakota Supreme Court reached the same conclusion in *Bradley*, 587 N.W. at 594. Service in *Bradley* had apparently not been effected in a manner authorized by that state's long-arm statute.

Service here was made in compliance with Code of Virginia § 8.01-320(A). The process server's affidavit shows compliance with clause (ii). The wife claims in her brief and a letter in the file states that the process server was a North Dakota deputy sheriff. Even if he was, he was nonetheless an individual described in clause (ii). The motion to quash service is overruled.