[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action instituted by the plaintiff wife, Paula Cotter, against her husband, the defendant, Clifton Cotter, Jr. seeking a dissolution of their marriage. The plaintiff has resided in the State of Connecticut for more than one year prior to the bringing of this action and the court has jurisdiction over the marriage and the parties. Neither party has been a recipient of public assistance during the period of the marriage. The parties were married on May 7, 1983. They have two children who have the following names and birth dates: Clifton Cotter, III born on December 18, 1987 and Paul Patrick Cotter, born on October 1, 1993. There are no other proceedings pending in this state or any other concerning the custody of the children. The parties' marriage has broken down irretrievably. There is no reasonable hope of reconciliation, and the court orders a dissolution of the marriage.
This dispute presented a limited contested case in that the parties ultimately agreed that the wife will have primary physical custody of the children and the parties will have joint legal custody. Although not expressly raised at the beginning of the trial, the wife now contests the husband's request to visit with the children every weekend.
The court has carefully reviewed and considered the witnesses' testimonies and the documents presented by the parties during the trial of this matter, as well as the parties' other stipulations and submissions including their proposed orders, financial affidavits, and post-trial memoranda. The court has also carefully considered the statutory criteria for the granting of a dissolution of marriage, the awarding of visitation, child support, alimony, and attorney's fees, and the dividing of the parties' assets and liabilities. See C.G.S. Secs.46b-56, 46b-62, 46b-81, 46b-82, 46b-84.
The wife is 48 years old and the husband is 46 years old. Both parties are in reasonably good health. The wife only works part-time, receiving a wage of approximately $80 a week. The husband works as a construction supervisor. He earns a gross, base pay of approximately $65,000, and an additional $10,000 for long distance travel.
According to the wife's financial affidavit, she has bank accounts having approximately $900 cash; deferred compensation plans of approximately $235,054; and other personal property and furniture valued at about $20,000. Her liabilities total slightly more than $14,046, excluding the tax liabilities relating to the foreclosure of property on East Main Street, Waterbury, Connecticut. This foreclosure action is described further below. According to the husband's financial affidavit dated June 29, 2000, he has bank accounts having approximately $11,500 cash; deferred compensation plans of approximately $332,171; and other personal property and furniture valued at $18,000. His liabilities total CT Page 13751 $38,693, which include a debt of about $975 also appearing on the wife's financial affidavit. The parties also own various motor vehicles with the values as specified on their financial affidavits.
The parties jointly own real estate in Connecticut and Rhode Island. They have stipulated to the value of these properties. The parties' family residence is located on Fiske Street, Waterbury, Connecticut. This property has a fair market value of $104,000 and mortgages in the approximate of $87,700, leaving an equity value of about $17,000. The parties also own a vacation home on Atlantic Avenue, Westerly, Rhode Island, which the husband built during the marriage with some assistance from his wife. This property has a fair market value of $300,000 and a mortgage in the approximate amount of $14,000, leaving an equity value of about $286,000. The parties also own a lot at Dunns Corner, Westerly, Rhode Island having a fair market value of $28,500. This property does not have a mortgage on it. The parties own another lot at Ridge Wood, Charlestown, Rhode Island. This property has a fair market value of $30,000 and a mortgage of approximately $12,000, leaving an equity value of about $18,000.
The parties previously owned property located on East Main Street, Waterbury, Connecticut. They lived on this property from 1983 to 1987, when they moved to the Fiske Street property. After this move, East Main Street was used as rental property. In 1999, soon after the wife instituted this dissolution action, the husband stopped paying the mortgage on the East Main Street property. Although the husband's cash flow problems at this time were serious, the three units of this property were fully rented and the husband had the financial resources to make the mortgage payments, especially in light of his other available assets. The court finds incredible the husband's explanation about why the East Main Street tenants stopped paying rent, especially in light of his negligible effort to enforce payment. In September 1999, the East Main Street property was lost through a foreclosure action. The foreclosure court found that the property's fair market value was $50,000 and the total debt, including costs, was $122,660.93. A deficiency judgment was not sought, creating a joint, forgiveness of debt tax liability of about $26,000. At one point during these proceedings, the husband negotiated a settlement of this tax liability, and filed a motion to use funds of the marital estate to satisfy this debt. This motion was not pursued, and therefore, was not acted on by the court.
The husband jointly owned two other properties with a John Regan, located on Cooke Street and Bidwell Street, Waterbury, Connecticut. In or about May 2000, the Bidwell Street property was lost through foreclosure. In or about July 2000. the Cooke Street property was lost through foreclosure. CT Page 13752
The parties sharply' disagree on the orders which should issue concerning child support, alimony and property divisions. These disagreements significantly turn on the parties' disputes about the yearly earnings which should be attributed to the father and the cause of the marital breakdown. The court will specifically address these factual disputes.
Both parties agree that the husband's present gross salary is $75,000 a year. This figure includes his base pay of $65,000 and an additional $10,000 a year representing compensation for employment related travel. In order to determine the husband's gross income for the calculations under the child support guidelines, the wife argues that other items of income should be added to this gross income. First, under the husband's employment contract, his employer contributes 3% of his base salary to his 401k. The court agrees with the wife that the amount of this contribution should be treated as additional income to the husband for purposes of the child support calculation. Therefore, the court adds $37.50 a week to the husband's gross income based on his base income of $65,000. See Child Support Guidelines, Sec. 46b-215a-2a(11)(A)(iv) and (v). Adding this $37.50 a week or $1,950 a year to the husband's earnings, the court will treat the husband's gross income as $76,950 a year or $1,479.80 a week for the purpose of calculating child support under the guidelines.
At the time of trial, the husband was supervising a construction project in New Jersey. As a result of this particular, out-of-state project, his employer provided him with a furnished home in New Jersey and a vehicle for his use. The wife claims that some amount should be added to the husband's income to reflect the in-kind value of these employee benefits. According to the evidence, the New Jersey project was scheduled to be completed in August 2000 or soon thereafter, and therefore, the court will not include any in-kind benefits associated with this project to the husband's income for present calculations.
Under the husband's employment agreement, he is also entitled to receive a bonus upon the completion of the New Jersey project. The court ordered these funds to be held in escrow if they were received before the court's final orders. The parties contest what the exact amount of this bonus will be. The husband's testimony that this bonus will be $22,500 gross appears to be the more credible position. Because of the court's disposition orders, the court will not consider this lump sum bonus as part of the husband's income for the purpose of calculating child support.[1]
The husband received income from the three, Waterbury rental properties CT Page 13753 from 1998 to 2000. The husband apparently claims that he was not obligated to show this rental income on his financial statements because the expenses exceeded the income. Nevertheless, the evidence indicates that prior to the foreclosures of these properties, the actual weight of these expenses was reduced because the husband stopped paying the mortgages on these properties, and the court questions the credibility and accuracy of the husband's explanation about how the rental income was used. The husband's credibility is also made questionable by the "coincidence" that the mortgage payments stopped soon after this dissolution action was filed, as well as by his tepid efforts to pursue delinquent rent from tenants. Although these facts will be considered by the court in the overall evaluation of the case, the court agrees with the husband that since all these rental properties have now been lost through foreclosure and will no longer provide a source of income, this rental income should not be considered in determining the husband's income for child support purposes.
During the summers of 1998, 1999, and 2000, the husband rented the family's vacation home in Westerly. Rhode Island. This rental income also does not appear on the husband's financial statements filed in this action. Again, the husband's testimony is not entirely clear how the rental income for the years 1998 and 1999 was spent. At the end of the trial, the court ordered all rents received from the summer of 2000 to be held in escrow, which was estimated to be about $10,000. The rental income from this property collected in 2000 also will not be added to the husband's income for purposes of the child support calculation because of the court's final disposition orders.
In regard to the breakdown of the marriage, the court finds that although both parties contributed to this breakdown, the court agrees with the wife that the husband's conduct was the primary cause for the marriage's irretrievable breakdown. Particularly after the husband's treatment for cancer in 1992, the husband became increasingly absorbed with enjoying life on his terms with little participation from his wife and with little concern about her feelings. He admitted that in the later years of the marriage, in order to engage in business commitments and his own personal activities, he would often leave the family home as early as 5:00 a.m. and return as late as 11:00 p.m. In addition to his full time employment, he also was primarily responsible for the three rental properties in Waterbury, Connecticut. The upkeep and management of these properties would often require his time during the week as well as on the weekends.
In 1997 and 1998, the husband trained for and participated in the Boston Marathon with a female friend. During these years he spent a substantial amount of time with this friend and her family. Although CT Page 13754 there is no evidence that the husband and this friend were intimately involved, they were very close emotionally, and the husband failed to alter his relationship or time with her even after objections by and confrontations with his wife. The very self-concerned behavior of the husband is further exemplified by the deteriorated state of the family residence and by his handling of the family's finances. As evidenced by the record, he unilaterally created substantial liabilities even after the institution of this lawsuit in violation of the automatic stay of Rule 25-5(a)(2) of the Practice Book. For example, without permission from his wife or authorization from the court, he converted $150,000 of his retirement accounts to Roth IRA's during the pendency of this litigation creating a $36,000 tax liability.
Other than their deferred compensation accounts, the parties' single, most Valuable asset is the property located on Atlantic Avenue, Westerly, Rhode Island. This property has been used by the husband at times as his residence since the parties' separation. The wife resides at the Fiske Street premises with the children. Each party requests ownership of Atlantic Avenue and wants the other to own Fiske Street. After very careful consideration of the parties' arguments on this issue, the court rejects the precise proposals of both parties, but accepts the husband's position that the Atlantic Avenue property should be transferred to him.
The wife has resided in the Fiske Street property with the children since 1987. The children are enrolled in private school in Connecticut, they have family and personal contacts here, and the wife is employed in Connecticut. In the court's view, a switch of the parties' residences at this time would create more conflict and be more disruptive than the advantages that would be achieved by such a move. The wife argues that she should receive Atlantic Avenue, rather than Fiske Street, because of Fiske Street's poor condition and the bad memories associated with it, but these issues may be addressed by repairing the property or selling it. The husband argues that the wife's desire for Fiske Street is based on vindictiveness. The court agrees with the husband that there may be an element of vindictiveness in the wife's position and that this is not a factor pertinent to the court's orders of disposition. On the other hand, as previously explained, the court also agrees with the wife that the husband's conduct was the primary cause for the irretrievable breakdown of the marriage. Under all the circumstances, the court is satisfied that the dispositions ordered below effect a fair and equitable resolution of the parties' disputes.
 ORDERS
1. Dissolution of marriage. The party's marriage is hereby dissolved. CT Page 13755
2.Custody. The parties shall have joint legal custody of their minor children. The wife shall have primary physical custody. The wife shall not remove the children to a permanent abode outside the State of Connecticut or the State of Rhode Island without the written consent of the defendant or an order of the Court.
The mother indicates that she wants to relocate to the parties' Rhode Island residence, but during the trial, she also expressed a possible desire for a future move to Minnesota where she is originally from. In regard to relocating, she has argued in her pretrial memoranda that tinder federal statute, the Indian Child Welfare Act (25 U.S.C. § 1901, et seq., hereinafter referred to as the "ICWA"), the court lacks authority to issue an order requiring the mother to acquire the father's permission or court authorization to relocate. This argument is meritless. The ICWA does not apply to orders regarding Indian children based "upon an award, in a divorce proceeding, of custody to one of the parents." 25 U.S.C. § 1903(1). Federal courts hold that the ICWA does not apply to child custody orders issued pursuant to divorce proceedings. See, e.g., Comanche Indian Tribe of Oklahoma v. Hovis,53 F.3d 298, 302 (10th Cir. 1995); DeMent v. Oglala Sioux Tribal Court,874 F.2d 510, 514 (8th Cir. 1989); Larch v. Eastern Band of CherokeeIndians, 872 F.2d 66, 69 (4th Cir. 1989).
3. Visitation. The father shall have liberal and flexible rights of visitation with the children which shall include every weekend from Friday 8:00 p.m. until Sunday 6:00 p.m., except that by the 25th day of each month the mother shall have the right to inform the father that she is designating one weekend during the following month when the children will remain with her without visitation with the father.
The parties shall share or alternate all holidays and school vacations. The father shall have parenting time with the children for three weeks during their school summer vacation which may be consecutive weeks. The father shall notify the mother by May 15th of each year about the specific weeks he intends to exercise vacation with the children during the following summer.
This visitation schedule essentially adopts the husband's proposed order regarding visitation. The wife did not offer any specific visitation schedule in her proposed orders. In the wife's post-trial memorandum, she expressed dissatisfaction with the husband's request to have the children every weekend, but this objection was not raised during the trial or in her proposed orders. The court has nevertheless, found it in the best interests of the children and the parties for the mother to have the opportunity for some weekend time with the children and the CT Page 13756 court's order expresses this position.
4. Child Support. The husband shall pay child support to the wife in the amount of $297 a week consistent with the child support guidelines. The calculation is based on the wife's uncontested weekly income of $80 gross and $65.20 net and the husband's gross income of approximately $1,480 as previously explained and $1,030 net, with the husband paying $25.50 for the children's health insurance. The husband shall be exclusively entitled to the tax dependency exemptions and tax credits for the children.
The husband has requested a downward deviation of the support payment to reflect his willingness to pay for the children's parochial school tuition and to reflect travel expenses he will incur to exercise visitation. The court denies these requests. A primary basis for this denial is that, the actual amount of these expenses is presently unclear and undetermined. Additionally, considering the overall picture of the parties' financial circumstances, this downward deviation doses not appear consistent with the parent's entire, financial support for the children or with the children's best interests.
The husband has offered in his proposed orders to assume and pay for the children's college tuition, room and board based on an amount not to exceed these costs at the University of Connecticut at Storrs. The court, however, is without authority to require the husband to assume any such responsibility on this record. The law is well-established that in the absence of a mutual agreement or stipulation between the parties, the court does not have the authority to order a parent to pay for college expenses for a child who is beyond the legal age for support. See C.G.S. Sec. 46b-84. Because the parties have not reached any agreement regarding the children's college education, the court cannot order payment of these expenses. This restriction on the court's authority to order the payment of college expenses exists even though the wife in her post-trial memorandum does not oppose the husband's offer.
The husband's offer to pay for the children's college expenses was made as part of other financial provisions proposed by him. The court has rejected much of what the husband proposed. Even the wife has conditioned her acceptance of the husband's offer on a demand that the husband's obligation to pay these expenses not reduce the amount of child support and alimony she is requesting. The court cannot assume that the husband's willingness to have a court order to pay the children's college expenses would continue in light of the actual financial orders issued by the court, which is one reason why a stipulation between the parties on this issue is necessary in order for the court to order a parent to assume such expenses. CT Page 13757
5. Health insurance. The husband shall provide and maintain health insurance for the minor children as available through his employment. Pursuant to the support guidelines, the father shall be responsible for paying 67% and the mother shall be responsible for paying 33% of the uncovered or unreimbursed medical, dental, therapeutic and similar expenses of the minor children.
6. Alimony. The husband shall pay periodic alimony to the wife in the amount of $250 a week for two years, and thereafter. $150 a week for fifteen years. The amounts of this periodic alimony shall not be reduced for the first five years based solely on the wife's increased earnings or earning capacity. This periodic alimony shall terminate upon the death of either party, the remarriage of the wife, or the cohabitation of the wife with another person as defined by Section 46b-86 of the General Statutes.
The husband shall pay to the wife $50,000 in lump sum alimony within 90 days of this order which shall be made through a transfer of $50,000 from the husband's deferred compensation accounts to the wife's deferred compensation accounts.
As previously stated, the court has taken into consideration all of the criteria of Section 46b-82 of the General Statutes concerning the award of alimony, and the court makes particular mention of the following: the length of the marriage, the cause for the dissolution, the ages of the parties, the husband's ability to pay, the wife's needs, the parties' vocational skills, and the other financial orders issued by the court.
Specifically in regard to the periodic alimony award, the court notes the desirability and the need for the wife to secure more lucrative employment and for her possibly to be retrained for this purpose. Especially in light of her present, very low income, the court also notes the need for her to receive continued support during this initial period of rehabilitation despite her achieving some increases in her income through these efforts.
7. Property divisions.
Real Property. The husband shall receive full and exclusive ownership and possession of the following properties:444 Atlantic Avenue, Westerly, Rhode Island; Dunns Corner, Westerly, Rhode Island; and Ridge Wood, Charlestown, Rhode Island. The husband shall assume and pay all mortgages, taxes, insurance and expenses related to this property and shall hold the wife harmless and indemnify her for the same. CT Page 13758
The wife shall receive full and exclusive ownership and possession of the property located on 70 Fiske Street, Waterbury, Connecticut. Except as follows, the wife shall assume and pay all liabilities, taxes insurance and expenses related to this property and shall hold the husband harmless and indemnify him for the same. Within 90 days, the husband shall satisfy and pay in full the total amount of all mortgages and real estate taxes presently existing or outstanding on the property located on Fiske Street, Waterbury, Connecticut. The payment of these mortgage and tax obligations may be paid from cash on hand or through the liquidation of the husband's IRA's or other property retained by him. The husband shall solely and fully bear any expenses or taxes associated with any such liquidation. It is noted that during the summer of 2000, the husband was scheduled to receive rental income from the Rhode Island residence and an employment bonus. The transfer of the Fiske Street property and the payment of the mortgages and taxes are significant to the welfare of the wife and the children, and therefore, the transfer of the Fiske Street property to the wife and the husband's obligation to pay the real estate taxes and mortgages regarding this property shall be deemed in the nature of support and non-dischargeable for bankruptcy purposes.
Personal Property. The wife shall be exclusively entitled to all furniture, furnishings and personal property located on the Fiske Street, Waterbury, Connecticut property, except for those items set forth on Schedule A to which the husband shall be exclusively entitled. The wife shall make these items of Schedule A available to the husband and the husband shall retrieve these items within 90 days.
The husband shall be exclusively entitled to all furniture, furnishings and personal property located on the Atlantic Avenue, Westerly, Rhode Island property.
Automobiles. The wife shall be exclusively entitled to and the husband shall transfer or relinquish all of his interest in and to the 1993 Dodge Caravan, the 1979 Mazda RX-7. and the 1976 Volkswagon Beetle automobiles and the wife shall assume and hold the husband harmless and shall indemnify him for any and all obligations associated therewith.
The husband shall be exclusively entitled to and the wife shall transfer or relinquish all her interest in the 1998 Toyota Pickup truck, 1985 Chevrolet Van, 1986 SAAB, and the 1970 Ford LTD automobiles and the husband shall assume and hold the wife harmless and shall indemnify her for any and all obligations associated therewith.
Cash, Stock and Accounts. The wife shall retain to the exclusion of the husband all cash and bank accounts as listed on her financial affidavit. The husband shall retain to the exclusion of the wife all cash, bank CT Page 13759 accounts and stock as listed on his financial affidavit. The court ordered the husband's employment bonus and the Atlantic Avenue rental income, both expected to be received in August 2000, to be held in escrow. If and when received, these funds shall be retained by the husband to the exclusion of the wife.
Deferred Compensation Accounts. The wife shall retain to the exclusion of the husband her deferred compensation accounts as listed on her financial affidavit. The husband shall retain to the exclusion of the wife his deferred compensation accounts as listed on their financial affidavit, except for the lump sum alimony award as previously provided.
8. Debt divisions. Except as follows, the wife shall be responsible for all debts and liabilities as listed on her financial affidavit, and she shall hold the husband harmless and shall indemnify him for the same. The husband shall be responsible for all debts and liabilities as listed on his financial affidavit and shall hold the wife harmless and shall indemnify her for the same. Additionally, the husband shall be solely responsible for and shall satisfy and pay in full all outstanding amounts owed on the following debts or obligations within 90 days: all state and federal tax liabilities jointly owed by the parties, including those relating to the foreclosure of the East Main Street property; the Chase Bank revolving credit obligation; and the John Dempsey Hospital bill. The husband shall also be solely responsible for any and all expenses, liabilities, and taxes arising from the foreclosures of the Cooke Street and Bidwell Street properties, and he shall hold the wife harmless and indemnify her for the same.
9. Counsel fees. The husband shall pay $15,000 to the wife within 90 days to be applied to the wife's attorney fees. These fees may be paid from cash on hand or through the liquidation of the husband's IRA's or other property retained by him. The husband shall solely and fully bear any expenses or taxes associated with any such liquidation. It is again noted that during the summer of 2000, the husband was scheduled to receive rental income from the Rhode Island residence and an employment bonus. On the basis of the file and the evidence, the court is satisfied that a reasonable fee for the wife's attorney is equivalent to or more than $15,000, and under all the circumstances and the statutory criteria, a $15,000 payment by the husband to be applied against these fees is appropriate.
10. Miscellaneous. Each party shall act in good faith and shall execute all documents necessary to effectuate the orders issued herein within 90 days. The child support and periodic alimony shall be paid directly by the husband to the wife through a wage withholding. The court shall retain continuing jurisdiction to effectuate the orders issued herein. CT Page 13760
So ordered this, 7th day of November 2000.
Stevens, J.
 SCHEDULE A Power Tools Hand Tools Electrical, plumbing, HVAC and carpentry materials and shelving. Work bench in garage Radial arm saw Wood bedroom set in attic/basement Drafting table in basement Defendant's clothing Sleeper sofa on porch Mantle clock Picture of defendant building home in Rhode Island Blue mirror table in living room Hitchcock chairs in attic