2009 ND 20

**Richard K. KELLY, Plaintiff and Appellant**

v.

**Karol Lee KELLY, Defendant and Appellee.**

No. 20080103.

Supreme Court of North Dakota.

Feb. 3, 2009.

Paul H. Myerchin, Bormann & Myerchin, LLP, Bismarck, ND, for plaintiff and appellant.

William C. Severin (appeared), Severin, Ringsak & Morrow, Bismarck, ND, for defendant and appellee.

Steven C. Emery, pro hac vice, Fort Yates, ND.

MARING, Justice.

[¶ 1] Richard Kelly appealed from a district court judgment granting him a divorce from Karol Kelly but concluding that the district court lacked subject matter jurisdiction over the incidents of the marriage. We reverse and remand, concluding the district court had concurrent subject matter jurisdiction with the tribal court to adjudicate the incidents of the parties' marriage.

I

[¶ 2] Richard Kelly brought this action in state district court seeking a divorce from Karol Kelly. Richard Kelly is a non-Indian. Karol Kelly and the parties' daughter, G.K., are enrolled members of the Standing Rock Sioux Tribe ("Tribe").

[¶ 3] Richard and Karol began a relationship in the late 1990s when both lived in Sioux Falls, South Dakota. They purchased a home together in Canton, South Dakota, and Richard continued operating his family's insurance agency in Sioux Falls with his father. Karol owned non-trust farm and ranch land on the Standing Rock Reservation in North Dakota, and in 2000 the parties moved to the reservation and lived on Karol's farm property there. Richard ran the insurance agency from a trailer on non-trust land owned by Karol on the reservation.

[¶ 4] Richard and Karol married in Las Vegas, Nevada, in June 2003, and their daughter G.K. was subsequently born in Bismarck, off of the reservation. G.K. had been conceived in South Dakota, off of the reservation. The family lived together on the reservation until 2005, when Richard left the home and began living in hotels, ultimately renting a condominium in Bismarck in September 2005. In March 2006, Richard purchased a house in Bismarck. Later in 2006, Richard moved the insurance agency to Bismarck.

[¶ 5] Richard commenced this divorce action in state court in December 2006. Karol answered and filed a counterclaim, requesting that she be granted a divorce from Richard, that she receive child custody, child support, spousal support, and attorney fees, and that the court make an equitable division of the parties' property. While the divorce action was pending, Karol continued to work at the insurance agency in Bismarck until October 2007, when she was terminated. Richard also alleges that the parties attempted to reconcile while the divorce was pending, and that Karol and G.K. lived with him in the house in Bismarck from approximately March through June of 2007.

[¶ 6] In December 2007 a dispute arose over holiday visitation. After a hearing, the district court awarded Richard holiday visitation with G.K. On January 11, 2008, Karol commenced a separate divorce action in tribal court and served a motion in the pending state court action seeking dismissal of that action based upon lack of subject matter jurisdiction. In that motion, Karol asserted for the first time that

the tribal court had exclusive jurisdiction in the matter.

[¶ 7] The district court initially held that it lacked subject matter jurisdiction and granted Karol's motion, dismissing the action in its entirety. Richard filed a motion for reconsideration, arguing that the district court at a minimum had jurisdiction to order a divorce of the parties. The district court issued an Order Upon Reconsideration, holding that it had jurisdiction to dissolve the marriage but lacked jurisdiction over the incidents of the marriage. Judgment was entered granting Richard a divorce from Karol but dismissing the rest of the action.

II

■ [¶ 8] Richard argues on appeal that the district court erred when it concluded it lacked subject matter jurisdiction over the incidents of the marriage.

■ [¶ 9] We first note that the parties have not challenged the district court's authority to order dissolution of the marriage. This Court has recognized the "divisible divorce" doctrine:

Divorce proceedings typically contain two principle components: (1) the dissolution of the marital status, and (2) the adjudication of the incidents of the marriage. The "divisible divorce" doctrine recognizes that each of these components have "distinct and separate jurisdictional foundations." *Hall v. Hall*, 585 S.W.2d 384, 385 (Ky.1979).

It has been determined that the dissolution of the marriage is an *in rem* proceeding and that, if process has been properly effectuated, a court has jurisdiction to change the marital status of the parties even when only one party to the marriage is a resident of the state in which the court is located. Indeed, this Court has recognized that a court need "not have personal jurisdiction over both spouses to validly terminate the marital status" if procedural due process has been met, and that "as long as the plaintiff satisfies the six-month residency requirement under [NDCC] § 14–05–17," a court has jurisdiction to change the parties' marital status "no matter where" the defendant spouse resides. *Byzewski v. Byzewski*, 429 N.W.2d 394, 397 (N.D.1988). . . .

But meeting the jurisdictional requirements to sever the marital status itself "does not necessarily grant the court the authority to adjudicate the related inciden[ces] of the marriage." *Id.* at 397. "Before adjudicating the incidences of the parties' marriage," a trial court "is required to obtain *in personam* jurisdiction over both [of the spouses]." *Simpson [v. O'Donnell]*, 98 Nev. [516,] 518, 654 P.2d [1020,] 1021 [1982]. Thus, a court must have personal jurisdiction over a nonresident spouse in order to validly adjudicate matters of alimony or spousal support; the distribution or division of property; rights to child custody; and the award of child support.

*Smith v. Smith*, 459 N.W.2d 785, 787–89 (N.D.1990) (citations and footnote omitted); *see also Catlin v. Catlin*, 494 N.W.2d 581, 588 (N.D.1992).

[¶ 10] Nor does Karol assert on appeal that the district court lacked personal jurisdiction over her. She was validly served with process in Bismarck, off of the reservation, and made a general appearance in the action, filing an answer and counterclaim requesting that the district court award a judgment in her favor. It was not until the action had been ongoing for more than a year that Karol first challenged the district court's jurisdiction. Thus, the district court had in personam jurisdiction over Karol and would ordinari-

ly acquire authority to adjudicate the incidents of the marriage.

[¶ 11] When, however, one of the parties to a divorce action is an enrolled tribal member residing on a reservation, the complex interrelation with tribal court jurisdiction becomes a factor. As this Court noted in *Rolette County Soc. Serv. Bd. v. B.E.*, 2005 ND 101, ¶ 6, 697 N.W.2d 333, "[r]elative to the issue of state court jurisdiction, if there is an available forum in the tribal courts, considerations of tribal sovereignty and the federal interest in promoting Indian self-governance and autonomy arise." State court jurisdiction over certain claims is therefore prohibited if it would "undermine the authority of the tribal courts over Reservation affairs and hence would infringe on the right of the Indians to govern themselves." *Id.* (quoting *Williams v. Lee*, 358 U.S. 217, 223, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959)). Karol asserts that exercise of jurisdiction by the district court over the incidents of the marriage in this case would infringe upon the Tribe's right to self-government.

[¶ 12] We begin our analysis of this issue with the recognition that the provisions of the Indian Child Welfare Act ("ICWA"), 25 U.S.C. §§ 1901–1963, which create exclusive jurisdiction in the tribal court for certain child custody proceedings involving an Indian child who resides on a reservation, *see* 25 U.S.C. § 1911, do not apply in this case. By its express terms, ICWA does not apply to an award of custody to a parent in a divorce proceeding. 25 U.S.C. § 1903(1); *see Comanche Indian Tribe v. Hovis*, 53 F.3d 298, 302 (10th Cir.1995); *DeMent v. Oglala Sioux Tribal Court*, 874 F.2d 510, 514 (8th Cir.1989); *In re Larch*, 872 F.2d 66, 69 (4th Cir.1989); *Roe v. Doe*, 2002 ND 136, ¶ 8, 649 N.W.2d 566. In fact, this exclusion from the tribal court's exclusive jurisdiction demonstrates a recognition by Congress of the concurrent jurisdiction of state and tribal courts in such cases:

> This statutory exclusion clearly indicates that a state court may lawfully award custody of an Indian child to a non-Indian parent in a divorce proceeding. The Act does not confer exclusive jurisdiction on either a tribal court or a state court to award custody of children in a divorce proceeding. Rather, the Act discloses that Congress recognized that there can be concurrent jurisdiction in state and tribal courts.

*Larch*, at 69; *see also Ex parte Rich*, 953 So.2d 409, 412 (Ala.Civ.App.2006) (ICWA's exclusion of divorce proceedings supports conclusion that state court has jurisdiction).

[¶ 13] The district court in this case based its holding that it lacked subject matter jurisdiction entirely upon this Court's decision in *Byzewski v. Byzewski*, 429 N.W.2d 394 (N.D.1988). In *Byzewski*, the husband was a non-Indian and the wife was an enrolled member of the Standing Rock Sioux Tribe. *Id.* at 395. The parties lived together for a number of years and had three children prior to their first marriage in 1979. *Id.* They apparently lived off of the reservation during that first marriage, and were divorced in state court in 1980. *Id.* The parties remarried in 1983 and resided together on the Standing Rock Sioux Reservation. *Id.* On March 13, 1986, the parties separated and the wife obtained various orders from the tribal court, including temporary custody of the children, a temporary restraining order, an order requiring her husband to remove his belongings from the marital home, and an order waiving the six-month waiting period for a divorce. *Id.* The husband moved off of the reservation the next day and filed a divorce action in state district court. *Id.* The wife appeared specially through counsel and moved to

dismiss for lack of jurisdiction. *Id.* at 396. The district court ultimately exercised jurisdiction and entered judgment granting custody of the children to the husband and ordering the wife to pay child support. *Id.*

[¶ 14] On appeal, this Court, with two justices concurring in the result, held that the district court did not have jurisdiction to determine custody and support. *Id.* at 401. The Court applied the infringement test of *Williams v. Lee,* 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959), and, stressing that "[a]ll incidents giving rise to the custody and support issues in this action for dissolution of the second marriage occurred on the reservation," and noting that "[t]he parties were married and lived together on the reservation with the children up until the time of separation," concluded that "under these circumstances, the district court's exercise of jurisdiction over child custody and support in [the state] divorce action 'infringed on the right of reservation Indians to make their own laws and be ruled by them.'" *Byzewski,* 429 N.W.2d at 399–400 (quoting *Williams,* 358 U.S. at 220, 79 S.Ct. 269).

[¶ 15] The holding in *Byzewski* has been limited by this Court in *Roe v. Doe,* 2002 ND 136, ¶ 25, 649 N.W.2d 566. In holding that a state court's exercise of jurisdiction over a paternity action involving an Indian mother and an Indian father who were members of different tribes did not infringe upon tribal self-government, this Court pointed to three key elements to distinguish *Byzewski:*

> The statuses of the litigants in *Byzewski,* were essentially identical to the statuses of Roe and Doe in regard to Standing Rock Sioux Tribe's right to govern itself. However, *Byzewski* is distinguishable from this case on three key bases. First, in *Byzewski,* we noted that the non-Indian husband lived on Standing Rock Sioux Reservation with the wife and "[a]ll incidents giving rise to the custody and support issues in this action for dissolution of the second marriage occurred on the reservation." *See id.* at 395, 400. Second, it was the wife, a member of the Tribe, who chose to file the action in Standing Rock Sioux Tribal Court and who asserted state court jurisdiction over the action infringed on Standing Rock Sioux Tribe's right to govern itself. Third, central to our holding in *Byzewski* was the fact that the state court asserted its jurisdiction after the tribal court had already issued temporary custody and support orders. None of these three bases are even remotely present in the case at hand.

*Roe,* at ¶ 25 (citations omitted).

[¶ 16] Two of these key distinguishing factors from *Roe* are also present in this case. Unlike *Byzewski,* in which all incidents of the marriage occurred on the reservation, in this case many critical incidents of the marriage occurred off of the reservation. For example, the marriage occurred in Nevada; the child was conceived off of the reservation and born off of the reservation; although living for a period of time with the family on the reservation, Richard moved off of the reservation while the marriage was still ongoing and purchased a home in Bismarck; the parties owned extensive property and a business off of the reservation; and Karol worked at the insurance business in Bismarck during the marriage. Thus, unlike *Byzewski,* in this case many significant incidents of the marriage took place off of the reservation. Furthermore, this Court noted in *Roe,* 2002 ND 136, ¶ 25, 649 N.W.2d 566, that it was "central" to the holding in *Byzewski* that the tribal court had already issued custody and support orders before an action was filed in state court. In this case, the state court action was first in time, and in fact had been

ongoing for more than a year when Karol first attempted to invoke the jurisdiction of the tribal court in January 2008.

[¶ 17] *Roe* limits the holding in *Byzewski* to cases where all relevant incidents of the marriage occurred on the reservation and proceedings were first commenced in the tribal court. The Court in *Roe* also recognized that the state, as well as the tribe, has a significant interest in cases involving family issues and child welfare. *Roe*, 2002 ND 136, ¶ 18, 649 N.W.2d 566. As the Court noted in *Roe*, at ¶ 18 (quoting Barbara Ann Atwood, *Fighting Over Indian Children: The Uses and Abuses of Jurisdictional Ambiguity*, 36 U.C.L.A. L.Rev. 1051, 1082 (1989)):

> "[T]he general precepts of federal Indian law suggest that tribes and states share significant authority over custody disputes involving Indian children. The doctrine of tribal sovereignty clearly supports tribal jurisdiction over most such disputes, except where the parties have essentially no contact with the reservation. State authority, arising from the states' legitimate *parens patriae* role, likewise exists, except where the parties have essentially no contact outside the reservation."

The Court in *Roe* therefore recognized that, in cases with off-reservation impact or which occur off-reservation, state courts will have concurrent jurisdiction:

> "[W]ith respect to claims that have significant off-reservation impact or occur off-reservation, state courts may assert jurisdiction, concurrent with tribal courts, even as to actions involving Indian defendants. In such a situation, the state's interest in hearing the dispute is not automatically overshadowed by tribal sovereignty."

*Roe*, at ¶ 30 (quoting Atwood, 36 U.C.L.A. L.Rev. at 1081).

[¶ 18] There are numerous factors in this case supporting the district court's authority to exercise concurrent jurisdiction in this case. The child was born in Bismarck, and Richard has lived in Bismarck for a significant part of the marriage. The parties own substantial property, including a home, off of the reservation, and they own an ongoing insurance business in Bismarck. Karol worked at the business in Bismarck during the marriage. We also find it significant that, when served with the summons and complaint, Karol did not object to the district court's jurisdiction, but filed an answer and counterclaim seeking affirmative relief from the court. It was not until more than a year later, after receiving an unfavorable ruling on a visitation dispute, that Karol first questioned the authority of the district court and filed a separate divorce action in tribal court. This is hardly a case where all incidents of the marriage occurred on the reservation. Many incidents of the marriage occurred off of the reservation, and resolution of the parties' claims will have "significant off-reservation impact." *Roe*, 2002 ND 136, ¶ 30, 649 N.W.2d 566. And finally, unlike *Byzewski*, in this case the parties first invoked the jurisdiction of the state district court, and that court had issued interim orders in the action before Karol sought to involve the tribal court. Under these circumstances, we conclude that the district court had concurrent jurisdiction with the tribal court to adjudicate the incidents of the marriage, and the court erred as a matter of law in concluding that the tribal court had exclusive jurisdiction.

[¶ 19] The conclusion that the district court has concurrent jurisdiction with the tribal court over the divorce does not, however, wholly end the inquiry.

There are separate statutory jurisdictional requirements for a court of this state to exercise jurisdiction over child custody determinations. Although not raised by the parties, the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), N.D.C.C. ch. 14–14.1, governs jurisdiction over child custody determinations, including those incidental to divorce actions. *See* N.D.C.C. § 14–14.1–01(3); *Harshberger v. Harshberger*, 2006 ND 245, ¶ 15, 724 N.W.2d 148 ("the UCCJEA establishes the criteria for deciding which state's courts have subject matter jurisdiction to make a child custody decision involving interstate custody disputes"). Under N.D.C.C. § 14–14.1–03(2), courts of this state must treat a tribe as a state when applying N.D.C.C. §§ 14–14.1–01 through 14–14.1–21.

[¶ 20] The UCCJEA sets strict jurisdictional requirements before a court of this state may exercise jurisdiction over an initial child custody determination:

1. Except as otherwise provided in section 14–14.1–15, a court of this state has jurisdiction to make an initial child custody determination only if:

   a. This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding, and the child is absent from this state but a parent or person acting as a parent continues to live in this state;

   b. A court of another state does not have jurisdiction under subdivision a, or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under section 14–14.1–18 or 14–14.1–19, and:

   (1) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and

   (2) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;

   c. All courts having jurisdiction under subdivision a or b have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under section 14–14.1–18 or 14–14.1–19; or

   d. No court of any other state would have jurisdiction under the criteria specified in subdivision a, b, or c.

2. Subsection 1 is the exclusive jurisdictional basis for making a child custody determination by a court of this state.

3. Physical presence of, or personal jurisdiction over, a party or a child is not necessary or sufficient to make a child custody determination.

N.D.C.C. § 14–14.1–12. Under the UCCJEA, the initial question for the court is whether this state is the child's home state, as defined in N.D.C.C. § 14–14.1–01(6):

"Home state" means the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. In the case of a child less than six months of age, the term means the state in which the child lived from birth with any of the persons mentioned. A period of temporary absence of any of the mentioned persons is part of the period.

[¶ 21] The UCCJEA essentially prioritizes home state status, and if this state is the child's home state the district court has jurisdiction. *See* Kelly Gaines Stoner, *The Uniform Child Custody Jurisdiction & Enforcement Act (UCCJEA)-A Metamorphosis of the Uniform Child Custody Jurisdiction Act (UCCJA)*, 75 N.D. L.Rev. 301, 313 (1999). If this state is not the child's home state, the court must determine whether another state is the home state and, if so, may only acquire jurisdiction if a court of the home state has declined jurisdiction. *See* N.D.C.C. § 14–14.1–12(1)(b); Stoner, 75 N.D. L.Rev. at 313 ("the state may exercise significant connection jurisdiction only when there is no home state, or when the home state has declined to exercise jurisdiction because the significant connection state would be the more appropriate forum"). Thus, on remand, the parties should be given an opportunity to present evidence relevant to the jurisdictional facts, and the district court must determine whether this state, the reservation, or neither is the child's home state. *See Langdeau v. Langdeau*, 2008 SD 44, ¶ 17, 751 N.W.2d 722 (holding that state court lacked jurisdiction under UCCJEA because reservation was the child's home state).

[¶ 22] Although the UCCJEA governs jurisdiction of the determination of child custody, it does not control jurisdiction over the remaining issues in the divorce. *See Langdeau*, 2008 SD 44, ¶ 14, 751 N.W.2d 722 ("a circuit court errs when it dismisses a divorce proceeding based on the jurisdictional requirements of the UCCJEA"). Thus, even if the district court determines that the reservation is the child's home state and that the tribal court therefore has jurisdiction over child custody, the district court retains concurrent jurisdiction over the remaining incidents of the marriage and may choose to exercise

that jurisdiction or defer to the tribal court if the court concludes that the tribal court is a more convenient forum. *See* N.D.R.Civ.P. 4(b)(5); *Commonwealth Land Title Ins. Co. v. Pugh*, 555 N.W.2d 576, 579 (N.D.1996).

[¶ 23] Although not critical to our decision, we further note that the district court's conclusion that it lacked subject matter jurisdiction may have been influenced by a misperception of the record. In its initial order dismissing the action for lack of jurisdiction, the court stated: "It is undisputed that Karol and the child both live on the reservation and have lived there since the date of the marriage." In two separate affidavits, however, Richard alleged that, for several months in 2007, the parties attempted a reconciliation, and Karol and G.K. lived with Richard in his house in Bismarck. While resolution of this factual dispute is not necessary to our determination that the district court has concurrent subject matter jurisdiction over the incidents of the marriage, its resolution may affect the determination whether the district court is the appropriate forum to resolve the custody and visitation issues in the divorce.

### III

[¶ 24] We conclude the district court erred in determining it lacked subject matter jurisdiction to adjudicate the incidents of the marriage. We reverse and remand for further proceedings in accordance with this opinion.

[¶ 25] GERALD W. VANDE WALLE, C.J., CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.

DANIEL J. CROTHERS, J.

I concur in the result.