2010 ND 136

**Andrew SCHIRADO, Plaintiff and Appellant**

v.

**Anna FOOTE and J.L.F., a minor child, by his natural guardian, Anna Foote, Defendants and Appellees.**

No. 20090282.

Supreme Court of North Dakota.

July 13, 2010.

Suzanne Marie Schweigert, Bismarck, ND, for plaintiff and appellant.

Jeffrey Lee Sheets, Minot, ND, for defendants and appellees.

CROTHERS, Justice.

[¶ 1] Andrew Schirado appeals the district court's judgment dismissing his custody action against Anna Foote, the mother of his minor child. Schirado also claims the district court erred by dismissing the action without addressing its prior contempt sanction against Foote and her lawyer. We reverse and remand for further proceedings to determine the child's home state under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCJEA") and for the district court to clarify its order for contempt and sanctions.

I

[¶ 2] Schirado and Foote met in October 2005 and later that month conceived a child in Bismarck, N.D. Schirado is a Caucasian, and Foote is an Indian enrolled in the Three Affiliated Tribes. Schirado was present at the child's birth in Williston, N.D., on July 29, 2006, but he was not listed as the child's father on the birth certificate. Schirado initiated this action in state court on February 9, 2007, seeking a determination of paternity and custody of the child if he was the father. At the time of filing, Schirado was living in Bismarck, Foote was living on the Minot State University campus during the week and living during the weekends and school holidays with her parents in Parshall, N.D., on the Fort Berthold Indian Reservation. The child stayed full time with Foote's parents on the Reservation. Also at the time of filing, the child did not qualify for tribal membership because of

an insufficient quantity of Indian blood, although he subsequently qualified for membership.

[¶ 3] On March 23, 2007, Foote moved the district court to dismiss Schirado's action for lack of subject matter jurisdiction. On April 27, 2007, Foote and her parents petitioned the Three Affiliated Tribes court for legal custody of the child. A hearing on Foote's motion to dismiss was held in the district court on April 30, 2007. At the hearing, Foote presented a tribal court order entered that same day, granting Foote and her parents joint temporary custody of the child for two years. The district court denied Foote's motion to dismiss and granted Schirado's motion for genetic testing, expressing concern for Schirado's due process rights in the tribal court proceedings.

[¶ 4] While waiting for the results of Schirado's paternity test, Foote moved the district court to reconsider her motion to dismiss for lack of subject matter jurisdiction. In July 2007, Schirado was determined to be the child's father. The district court denied Foote's motion for reconsideration, instead scheduling a custody hearing for September 16, 2008. In April 2008, Schirado moved for temporary custody of the child, and Foote, on May 1, renewed her motion to dismiss. At a hearing on Schirado's motion, the parties entered a stipulation granting Schirado visitation and ordering him to pay child support. Foote's motion to dismiss was denied on September 12, 2008.

[¶ 5] On September 15, 2008, Foote moved for reconsideration of her motion to dismiss. At 8:00 a.m. on September 16, 2008, the district court received a fax from Foote's attorney stating that he and Foote would not be attending the custody hearing scheduled for 9:00 a.m. that same day because the district court lacked subject matter jurisdiction. Attached to Foote's fax was an amicus brief from the Three Affiliated Tribes, claiming the tribal court had exclusive jurisdiction. The district court proceeded with the custody hearing, allowing Schirado to present his case but declining to establish a custody arrangement without the benefit of an adversarial proceeding. Foote's attorney was found in contempt and sanctioned for failing to appear at the custody hearing. That same day, the tribal court entered an ex parte order giving Foote temporary custody of the child. On September 26, 2008, the court denied Foote's pending motion for reconsideration.

[¶ 6] In January 2009, the district court ordered the parties to participate in mediation. Foote's attorney was given the opportunity to purge his earlier contempt if he and Foote participated in mediation in good faith, if Schirado's visitation was not frustrated and if he and Foote attended all future state court proceedings. On June 12, 2009, having failed to meet the conditions necessary to purge her attorney's contempt, Foote moved the district court to reconsider her motion to dismiss, arguing this Court's decision in *Kelly v. Kelly* divested the district court of jurisdiction. 2009 ND 20, 759 N.W.2d 721. The district court granted Foote's motion to dismiss on July 22, 2009, concluding:

"In this case, although Anna has not lived on the Fort Berthold Indian Reservation at all times since J.L.F. was born, J.L.F. has lived on the Fort Berthold Indian Reservation at all times. J.L.F. has either lived on the Fort Berthold Indian Reservation with Anna or with Anna's parents. Thus, J.L.F. has lived on the Fort Berthold Indian Reservation with 'a parent or a person acting as a parent.' *See* N.D.C.C. § 14–14.1–01 (stating that a 'person acting as a parent' is a person that has had physical custody of the child, and physical custo-

dy is the physical care and supervision of a child). North Dakota is not J.L.F.'s home state; rather, the Fort Berthold Indian Reservation is his home state. Therefore, this Court does not have jurisdiction to decide this matter."

Schirado timely filed this appeal.

## II

[¶ 7] Schirado argues the district court erred by finding the child's home state was the Fort Berthold Indian Reservation because the child was not living with either parent on the Reservation and because Foote's parents do not qualify as "a person acting as a parent" under the UCCJEA. It is well settled under North Dakota law that challenges to a district court's subject matter jurisdiction are reviewed de novo when the jurisdictional facts are not in dispute. *Harshberger v. Harshberger*, 2006 ND 245, ¶ 16, 724 N.W.2d 148. When jurisdictional facts are disputed, the district court's decision on subject matter jurisdiction necessarily involves findings of fact and conclusions of law. Therefore, when disputed facts surround a challenge to the district court's subject matter jurisdiction, we are presented with a mixed question of law and fact. *See Escobar v. Reisinger*, 133 N.M. 487, 64 P.3d 514, 516 (N.M.Ct.App.2003) (holding jurisdictional challenge under the Uniform Child Custody Jurisdictional Act ("UCCJA") is mixed question of law and fact). Under this standard, we review the "questions of law subject to the de novo standard of review [and the] findings of fact subject to the clearly erroneous standard of review." *Wigginton v. Wigginton*, 2005 ND 31, ¶ 13, 692 N.W.2d 108.

[¶ 8] Many facts surrounding Foote's jurisdictional challenge are in dispute, making our review one of a mixed question of law and fact. The factually driven nature of the UCCJEA's jurisdictional analysis requires that a district court make factual findings, or at the very least factual recitations, related to the jurisdictional determination in a given case.

[¶ 9] Three issues must be addressed at the outset. First, the North Dakota district court had jurisdiction to establish Schirado's paternity under North Dakota's Uniform Parentage Act. N.D.C.C. § 14–20–04. Jurisdiction over a paternity suit does not, however, automatically extend the district court's jurisdiction to make an initial custody determination. *See, e.g., Kelly*, 2009 ND 20, ¶ 9, 759 N.W.2d 721 (recognizing possibility a district court may have jurisdiction to dissolve a marriage without jurisdiction to adjudicate incidences of the marriage). Second, the Indian Child Welfare Act ("ICWA") does not control this case. The ICWA grants tribal courts exclusive jurisdiction over "child custody proceeding[s]" involving Indian children. 25 U.S.C.A. § 1911(a). The covered "child custody proceeding[s]" include only foster care placements, terminations of parental rights, preadoptive placements and adoptive placements. 25 U.S.C.A. § 1903(1). Despite Foote's enrollment in the Three Affiliated Tribes and despite her exhaustive references to the ICWA in her brief and at oral arguments, the ICWA is not applicable because this case concerns an initial custody determination; a proceeding outside the purview of the ICWA. *See In re DeFender*, 435 N.W.2d 717, 721 (S.D. 1989). With the ICWA's inapplicability, the UCCJEA provides the exclusive jurisdictional basis for determining this interstate custody dispute. N.D.C.C. § 14–14.1–12(2). Third, the UCCJEA encourages communications between courts faced with competing claims of jurisdiction in child custody proceedings. Section 14–14.1–09(1), N.D.C.C., provides, "A court of this state may communicate with a court in

another state concerning a proceeding arising under this chapter." Our district courts should have communications with sister courts when permitted under section 14–14.1–09, and when required under the UCCJEA. *See* N.D.C.C. §§ 14–14.1–15(4), 14–14.1–17(2), 14–14.1–27.

[¶ 10] North Dakota's version of the UCCJEA was adopted in 1999 and codified in N.D.C.C. ch. 14–14.1. The UCCJEA was drafted by the National Conference of Commissioners on Uniform State Laws, and one of its stated purposes is to "[a]void jurisdictional competition and conflicts with courts of other States in matters of child custody which have in the past resulted in the shifting of children from State to State with harmful effects on their well-being." Uniform Child Custody Jurisdiction and Enforcement Act § 101 cmt.1, 9 U.L.A. 657 (1999).

■ [¶ 11] The purposes of the UCCJEA have been more broadly described:

"Some of the general purposes of the UCCJEA are to (1) avoid jurisdictional competition and conflict with courts of other states in child custody matters; (2) promote cooperation with the courts of other states to the end that a custody decree is rendered in the state that can best decide the case in the best interest of the child; (3) assure that litigation concerning the custody of a child take place ordinarily in the state in which the child and his family have the closest connection and where significant evidence concerning his care, protection, training, and personal relationships are most readily available, and that courts of this state decline the exercise of jurisdiction when the child and his family have a closer connection with another state; (4) discourage continuing controversies over child custody in the interest of greater stability for the child; (5) facilitate the enforcement of custody decrees of other states; and (6) promote and expand the exchange of information and other forms of mutual assistance between the courts of this state and those of other states concerned with the same child."

*Arkansas Dep't of Human Servs. v. Cox,* 349 Ark. 205, 82 S.W.3d 806, 822 (2002) (Glaze, J., dissenting) (emphasis omitted). To achieve the purposes of the UCCJEA and to relieve tension between the UCCJA and the federal Parental Kidnapping Prevention Act ("PKPA"), the UCCJEA establishes that a child's "home state" has jurisdictional priority. *Kelly,* 2009 ND 20, ¶ 21, 759 N.W.2d 721; *see also* John J. Sampson, *Uniform Family Laws and Model Acts,* 42 Fam. L.Q. 673, 676 (2008).

[¶ 12] The Fort Berthold Indian Reservation is a state under the UCCJEA. N.D.C.C. § 14–14.1–03(2). The state having "jurisdiction to make an initial child custody determination" is the child's "home state." N.D.C.C. § 14–14.1–12(1)(a). " 'Home state' means the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding." N.D.C.C. § 14–14.1–01(6). "A period of temporary absence of any of the mentioned persons is part of the period." *Id.* The home state determination is made at "commencement of a child custody proceeding." *Id.* A " '[c]hild custody proceeding' means a proceeding in which legal custody, physical custody, or visitation with respect to a child is an issue." N.D.C.C. § 14–14.1–01(3). A "child custody proceeding" includes a paternity action. *Id.*

■ [¶ 13] The district court's order dismissing this action did not specify whether its home state determination was based on the child living with his mother, with his grandparents or with both his mother and his grandparents. Rather, the

court concluded, "J.L.F. has either lived on the Fort Berthold Indian Reservation with Anna or with Anna's parents." We explain below that this lack of specificity hinders our appellate review and requires reversal and remand for further proceedings.

[¶ 14] If the home state determination was made based in whole or in part on the child living with the mother, the court's conclusion must be based on evidence in the record. Here, if the jurisdictional determination was based on the child living with Foote, we have only the court's bare conclusion in the order of dismissal. We also have potentially conflicting findings in the order denying Foote's May 2008 Motion for Reconsideration where the court stated:

"At the time that Schirado filed this action, Schirado was living in Bismarck, and Foote was attending college at Minot State University. During the time that Foote was at college, [J.L.F.] lived on a ranch on the Fort Berthold Indian reservation with Foote's parents. *On the weekends, Foote commuted back to the ranch to visit [J.L.F.]* Although Foote attended Minot State University, she maintained a mailing address on the reservation. Foote was, and still is, an enrolled member of the Three Affiliated Tribes. [J.L.F.] was not an enrolled member of the Tribe, and it did not appear that he was eligible for membership because he did not have the requisite degree of Indian blood. The Court will utilize the above facts to determine whether it has jurisdiction."

(Emphasis added.)

[¶ 15] If jurisdiction was determined based on the child living with Foote, the court's order should have addressed whether J.L.F. lived with Foote during the six consecutive months immediately before commencement of the action. N.D.C.C. § 14–14.1–01(6). Because Foote attended college in Minot and stayed there during the week, the court also needed to decide whether Foote's schooling constituted "[a] period of temporary absence" from living with J.L.F. *Id.* At the same time, and depending on the parties' arguments, Foote and Schirado both lived in North Dakota at least part of the time, and the district court also may need to decide whether J.L.F.'s stay on the Fort Berthold Indian Reservation was a "temporary absence" from North Dakota. *Id.* We remand for further proceedings consistent with this decision because none of these findings were made in the initial proceeding and we are unable to determine whether the district court considered either Foote's or the child's period of temporary absence from the states involved in this case.

[¶ 16] The alternative basis for the district court's dismissal of Schirado's action was that the child lived with Foote's parents. If the home state determination was based in whole or in part on the child living with his grandparents, the grandparents would need to be persons acting as parents to the child. Under our version of the UCCJEA, a "[p]erson acting as a parent" is a nonparent who

"a. Has physical custody of the child or has had physical custody for a period of six consecutive months, including any temporary absence, within one year immediately before the commencement of a child custody proceeding; and

b. Has been awarded legal custody by a court or claims a right to legal custody under the law of this state."

N.D.C.C. § 14–14.1–01(11). The grandparents cared for the child from September 2006 to December 2007, arguably satisfying the first requirement of being "a person acting as a parent" if the jurisdictional decision was not based on J.L.F. living with Foote. N.D.C.C. § 14–14.1–

01(6). However, jurisdiction depends on the circumstances that exist at the time the proceeding is commenced. *Id.* The grandparents had not been awarded legal custody by a court before Schirado commenced this action in North Dakota court. Therefore, the dispositive issue for determining jurisdiction, based on the child living with the grandparents, is whether the grandparents qualified as persons acting as parents by claiming a right to legal custody under the laws of North Dakota. *See* N.D.C.C. § 14–14.1–01(11)(b). We will proceed to discuss the applicable law on this issue because its analysis is likely to arise on remand. *In re Voisine*, 2010 ND 17, ¶ 13, 777 N.W.2d 908 (citing *Dosland v. Netland*, 424 N.W.2d 141, 142 (N.D.1988)).

[¶ 17] This Court has not interpreted what it means to claim a right to legal custody under North Dakota law. A survey of judicial decisions in other states reveals there is no consistent interpretation of the requirement. However, national case law consistently presents three elements considered in determining if a person claims a right to legal custody under the laws of a state: 1) formality, 2) timing and 3) plausibility.

A

[¶ 18] Our sister states require a nonparent's claim of legal custody to conform with differing levels of formality under the UCCJEA. Pennsylvania and Texas require nonparents seeking "person acting as a parent" status to formally apply for legal custody from a court before they are deemed to have claimed a right to legal custody under the UCCJEA. *Wagner v. Wagner*, 887 A.2d 282, 287 (Pa.Super.Ct.2005) (holding parent's mother needed to seek legal custody of the child from a court to claim a right to legal custody under UCCJEA); *In re S.J.A.*, 272 S.W.3d 678, 684 (Tex.App.2008) (holding stepmother needed to seek legal custo-

dy of child from a court to claim a right to legal custody under UCCJEA). On the other end of the spectrum, Delaware requires no formal application for legal custody, instead requiring only that the prospective "person acting as a parent" have "the right to claim legal custody" to qualify as a person claiming a right to legal custody of a child. *Adoption House, Inc. v. A.R.*, 820 A.2d 402, 408–09 (Del.Fam.Ct. 2003) (holding adoption agency claimed right to legal custody of child by having "the right to claim legal custody").

[¶ 19] In *Hangsleben v. Oliver*, 502 N.W.2d 838, 842–43 (N.D.1993), this Court addressed the term "a person acting as a parent" under the UCCJEA's predecessor, the UCCJA. *See* N.D.C.C. ch. 14–14 (repealed 1999). In *Hangsleben* and under the UCCJA, "[a] 'person acting as a parent' is defined as a 'person, other than a parent, who has physical custody of a child and who has either been awarded custody by a court or claims a right to custody.'" 502 N.W.2d at 842. In *Hangsleben* we concluded "the common-sense definition of a 'person acting as a parent'" included grandparents who "fed, clothed, and cared for" their granddaughter at the request of the child's mother and without a court order. *Id.* at 843. Other jurisdictions have reached similar results. *See In re A.J.C.*, 88 P.3d 599, 606–07 (Colo.2004) (finding adoptive parents to be persons acting as parents under UCCJA where they had "exercised all parental rights and responsibilities" since the child's birth); *Reed v. Reed*, 62 S.W.3d 708, 713 (Mo.Ct. App.2001) (finding maternal grandmother was person acting as parent under the plain meaning of the term in the UCCJA); *In re B.N.W.*, No. M2004–02710–COA–R3– JV, 2005 WL 3487792, **25–26 (Tenn.Ct. App. Dec.20, 2005) (finding paternal grandmother providing care for child was person acting as a parent under UCCJEA); *Ruf-*

*fier v. Ruffier,* 190 S.W.3d 884, 890 (Tex. App.2006) (finding maternal grandmother caring for child in Belarus was a person acting as a parent under UCCJEA).

[¶ 20] As between the UCCJA and the UCCJEA, the UCCJEA has changed the pertinent portion of the definition of a "person acting as a parent" to mean a person who "[h]as been awarded legal custody by a court or claims a right to legal custody under the law of this state." N.D.C.C. § 14–14.1–01(11)(b). We note the different words used in the definitions in the UCCJEA and the UCCJA. However, we have not been asked by the parties to this appeal to deviate from the level of formality applied in *Hangsleben.* Nor do we perceive a clear majority position among other jurisdictions addressing this point so that we are willing to change course without the benefit of full briefing and argument by parties with a stake in the outcome of the issue.

[¶ 21] Here, the grandparents did not formally claim a right to legal custody until they petitioned the tribal court to grant them temporary custody of the child. But their extended care and custody of the child appears to satisfy the "common-sense" definition in *Hangsleben* that the grandparents are persons acting as a parent. *See also* N.D.C.C. § 14–10–05 (parent may place child in home of grandparent). Therefore, for purposes of this case, if jurisdiction is based upon the grandparents, the formality requirement can be considered satisfied for purposes of determining whether the Fort Berthold Indian Reservation is the home state.

B

[¶ 22] The next factor is timing of the nonparent's claim. A small number of jurisdictions allow nonparents to assert their claim to legal custody at any point in the pending litigation. *See, e.g., Patrick v.*

*Williams,* 952 So.2d 1131, 1139 n. 9 (Ala. Civ.App.2006) (applying Alabama's modified version of UCCJEA and holding no formal claim to legal custody need be made in cases where grandparents have physical custody of child at time of proceedings); *Adoption House, Inc.,* 820 A.2d at 408–09 (waiving timing element from consideration by allowing nonparents to claim a right to legal custody under UCCJEA by merely having the right to do so). Most jurisdictions addressing this issue require a nonparent's claim of legal custody, whether formal or informal, to be asserted prior to or simultaneous with the initiation of the pending action. *See, e.g., In re Sophia G.L.,* 229 Ill.2d 143, 321 Ill.Dec. 748, 890 N.E.2d 470, 482 (2008) (holding maternal grandparents were persons acting as parents under UCCJEA where grandparents petitioned Indiana court for custody of children before father initiated pending proceeding in Illinois); *Plemmons v. Stiles,* 65 N.C.App. 341, 309 S.E.2d 504, 506 (1983) (holding grandparents were persons acting as parents under UCCJA where grandparents initiated pending proceeding by petitioning for custody of child); *Draper v. Roberts,* 839 P.2d 165, 173–74 (Okla.1992) (holding under UCCJA that "[t]he critical time for testing whether the custodians were 'acting as parents' and 'claim a right to custody' was the point in time when the [pending action] was filed"); *O'Rourke v. Vuturo,* 49 Va. App. 139, 638 S.E.2d 124, 128 (2006) (holding nonbiological father was a person acting as a parent under UCCJEA where he requested custody at outset of pending divorce proceeding); *In re A.C.,* 165 Wash.2d 568, 200 P.3d 689, 692 (2009) (holding foster parents were persons acting as parents under UCCJEA where they petitioned for nonparental custody at outset of pending action).

[¶ 23] Giving priority to a child's home state is the central provision of the UCCJEA, and the UCCJEA is intended to "[a]void jurisdictional competition and conflict with courts of other States in matters of child custody." Uniform Child Custody Jurisdiction and Enforcement Act § 101 cmt.1, 9 U.L.A. 657; *Kelly*, 2009 ND 20, ¶ 21, 759 N.W.2d 721. It has long been held that subject matter jurisdiction is determined at the time a suit is initiated, and to hold otherwise would undermine one of the UCCJEA's central functions by allowing participants to divest a state of jurisdiction by changing the analysis after proceedings have begun. *In re Mannix*, 97 Or.App. 395, 776 P.2d 873, 875 (1989). We therefore conclude that to qualify as a "person acting as a parent" under the UCCJEA, a nonparent's claimed right to legal custody must occur prior to, or simultaneous with, the initial filing related to the instant litigation. To hold otherwise would be contrary to the function of the UCCJEA and contrary to the principles of "certainty, predictability and uniformity of result." *Daley v. American States Preferred Ins. Co.*, 1998 ND 225, ¶ 14 n. 4, 587 N.W.2d 159 (enumerating goals in choice of law analysis).

[¶ 24] The record on appeal suggests the grandparents had not formally claimed a right of legal custody prior to Schirado commencing this action in North Dakota court. But the record does not contain the tribal court docket. Nor does our record contain any indication the North Dakota district court communicated with the Fort Berthold court, which was attempting to exercise simultaneous jurisdiction over custody matters present in this case. *See* N.D.C.C. § 14–14.1–09. Those communications appear crucial in a case like this where one party and her counsel refused to participate in some of the state court proceedings and where the tribal court apparently issued one or more ex parte orders. We therefore remand this case for communications with the tribal court that are deemed appropriate in the discretion of the district court and, thereafter, for a determination whether the grandparents claimed a right of legal custody prior to Schirado's commencement of this action in North Dakota court.

C

[¶ 25] A third factor some courts consider necessary for a person to claim a legal right of custody is the assertion of a colorable claim. *See, e.g., S.B. v. Dept. of Health and Social Servs.*, 61 P.3d 6, 13 (Alaska 2002) (interpreting UCCJEA to require "a claim of a right to legal custody be at least legally plausible"); *Rogers v. Platt*, 199 Cal.App.3d 1204, 1212–13, 245 Cal.Rptr. 532 (Cal.Ct.App.1988) (interpreting the UCCJA to require "a colorable claim to a right to custody"); *In re Clausen*, 442 Mich. 648, 502 N.W.2d 649, 682 (1993) (interpreting UCCJA to require a legal basis to claim a right to custody); *Garcia v. Rubio*, 12 Neb.App. 228, 670 N.W.2d 475, 484 (2003) (interpreting UCCJA to require a colorable claim of right to custody); *Campney v. Ayala*, 115 Misc.2d 381, 454 N.Y.S.2d 207, 209 (N.Y.Fam.Ct.1982) (interpreting UCCJA to require a legal basis of right to custody); *In re S.S.*, No. 22980, 2009 WL 161333, *5 (Ohio Ct.App. Jan.23, 2009) (interpreting UCCJEA to require a legitimate claim of right to custody); *Hylland v. Doe*, 126 Or.App. 86, 867 P.2d 551, 554 (1994) (interpreting UCCJA to require a colorable claim of right to custody); *State v. Samuel P.*, No. 93–0857, 1993 WL 328966, *2 n. 3 (Wis.Ct.App. Sept.1, 1993) (interpreting UCCJA to require "a recognizable claim of right to custody"). The Third Circuit Court of Appeals reached a similar conclusion while interpreting the PKPA, holding a federal court does not

have subject matter jurisdiction over PKPA disputes unless a colorable claim a violation has occurred is established. *Di-Ruggiero v. Rodgers,* 743 F.2d 1009, 1017 (3d Cir.1984); *see also Bell v. Hood,* 327 U.S. 678, 682–83, 66 S.Ct. 773, 90 L.Ed. 939 (1946) (holding "a suit may sometimes be dismissed for want of jurisdiction where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous").

[¶ 26] This Court has not specifically addressed the need for a colorable claim, but our jurisprudence is in line with the cases cited above. *See United Accounts, Inc. v. Teladvantage, Inc.,* 499 N.W.2d 115, 119 (N.D.1993) (holding litigant's notice of appeal did not divest district court of subject matter jurisdiction where notice of appeal was "patently frivolous on its face"). Addressing what it means to advance a colorable claim of a right to custody, the California Court of Appeals held that a colorable claim is a claim asserted in good faith and based on some plausible legal theory. *Rogers,* 199 Cal.App.3d at 1212, 245 Cal.Rptr. 532 (analyzing UCCJA). Absent a requirement of mandating a colorable claim, the underlying policies of the UCCJEA and the PKPA would be frustrated as nonparents execute "interstate abductions and other unilateral removals of children [ ] to obtain custody and visitation awards." *Id.* at 1212–13, 245 Cal. Rptr. 532. We caution, however, that determining whether a nonparent's claimed right to legal custody is legally plausible under the laws of North Dakota is only for the purpose of establishing jurisdiction; the claim's ultimate viability is a substantive question that must be answered by a court with subject matter jurisdiction under the UCCJEA. Our case law has not before stated the need for consideration whether the person claiming they are acting as a parent has a colorable claim to custody under North Dakota law. It understandably follows that the district court made no finding on this factor, but that the court will have to do so on remand.

III

[¶ 27] The district court found Foote and her attorney in contempt of court for failing to appear at the September 16, 2008 trial and ordered Foote's attorney to pay $8,017.25 in sanctions. Schirado argues the district court erred by dismissing his suit without addressing its order sanctioning Foote's attorney and awarding Schirado attorney's fees. As discussed above, the district court had jurisdiction to establish Schirado's paternity and child support even if the court did not have jurisdiction to make an initial custody determination. *See Kelly,* 2009 ND 20, ¶ 9, 759 N.W.2d 721. The district court entered an interim order in May 2008 establishing paternity, custody, visitation and support. The interim order was amended several times regarding visitation, and no final order was entered on any of the other issues after the district court determined it did not have subject matter jurisdiction to adjudicate custody of the child. We are unable to determine the merits of Schirado's sanction claim without a final order and without further explanation by the district court whether the contempt sanction was related to matters over which the district court retained jurisdiction. Therefore, we remand for the district court to determine the status of its order awarding Schirado attorney's fees.

IV

[¶ 28] We reverse and remand for determination of the child's home state consistent with this decision. On remand, the district court also must clarify whether its

order for contempt and sanctions is still valid.

[¶ 29] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.