NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

DANIEL WILLIAM GRIFFITH, *Petitioner/Appellant*,

*v.*

DELILAH JOE BENNETT, *Respondent/Appellee*.

No. 1 CA-CV 25-0671 FC

FILED 05-28-2026

Appeal from the Superior Court in Coconino County
No. S0300DO202400398
The Honorable Ted Stuart Reed, Judge

**VACATED AND REMANDED**

COUNSEL

Harris & Winger, P.C., Flagstaff
By Chad Joshua Winger
*Counsel for Petitioner/Appellant*

Aspey Watkins & Diesel, PLLC, Flagstaff
By Isabel M. Humphrey
*Counsel for Respondent/Appellee*

---

**MEMORANDUM DECISION**

---

Presiding Judge Michael J. Brown delivered the decision of the Court, in which Judge Veronika Fabian and Chief Judge Randall M. Howe joined.

---

**B R O W N**, Judge:

¶1 Daniel Griffith ("Father") appeals the superior court's order dismissing his petition for dissolution, legal decision-making, and parenting time. Because the court failed to make the requisite "home state" determination under the Uniform Child Custody Enforcement and Jurisdiction Act ("UCCJEA"), we vacate the order and remand for further proceedings.

## BACKGROUND

¶2 Father and Delilah Bennett ("Mother") share one minor child ("Child"), born in May 2023 in Tuba City, on the Navajo Nation. Child's birth certificate lists Mother's residential address as being located in Page, Arizona. Mother, but not Father, is a member of the Navajo Nation. Central to this appeal is where Child lived in the months before Father filed his December 2024 petition for dissolution, and thus whether Arizona or the Navajo Nation is Child's home state under the UCCJEA. *See* A.R.S. § 25-1002(7)(a)–(b) (defining a child's home state).

¶3 Mother and Father married in July 2024. Mother asserts that she attends college in Page and lives there during the week while Child stays with Mother's relatives in Tuba City. Mother usually returns to Tuba City on the weekends. But Father claims the family resided in Page from Child's birth through October 2024 when Child's maternal relatives moved her to Tuba City. Mother disagrees, stating the parties lived separately starting one month after their marriage, or from August 2024 onward.

¶4 Mother petitioned the Navajo Nation Family Court ("Navajo Court") for a domestic abuse protection order in December 2024. She alleged that Father (1) committed domestic violence against her in 2022, (2) took Child to California without her permission for several months in 2023, and (3) threatened to take Child away again in November 2024. Mother also petitioned to establish paternity, requested child custody and support orders, and asked for annulment or dissolution of the marriage. Mother

served Father with both petitions. The Navajo Court granted a temporary protective order and set a hearing for the following week but Father did not appear. The court issued a final order of protection, which precluded Father from contacting Mother and awarded her temporary physical custody as well as temporary child support.

**¶5** Father moved to vacate the Navajo Court's order, asserting he was not served with notice of the hearing. Because the record did not show Father was served, the court vacated its order. The court set a new hearing and mailed the notice to both Father and Father's counsel. When Father did not appear at the new hearing, the court reinstated its previous order.

**¶6** The day after Father was served with Mother's petitions, he petitioned for dissolution in the superior court, requesting sole legal decision-making for Child. Mother moved to dismiss Father's petition for lack of subject matter jurisdiction and alternatively asserted that Arizona is an inconvenient forum. After additional briefing, but without conducting an evidentiary hearing, the superior court dismissed Father's petition. Father timely appealed, and we have jurisdiction under A.R.S. § 12-2101(A)(1).

## DISCUSSION

### I. Child Custody Issues and the UCCJEA

**¶7** The UCCJEA, adopted by Arizona in 2001, is designed to "[a]void jurisdictional competition and conflict with courts of other States in matters of child custody." UCCJEA § 101 cmt. 1 (Unif. L. Comm'n 1997); A.R.S. §§ 25-1001 to -1067; *see Welch-Doden v. Roberts*, 202 Ariz. 201, 208, ¶ 29 (App. 2002). The Navajo Nation has not adopted the UCCJEA, but Arizona considers a tribal nation a "state" for purposes of the UCCJEA. A.R.S. § 25-1004(B). We review "issues of law, including statutory interpretation and a court's jurisdictional authority, de novo." *Holly C. v. Tohono O'odham Nation*, 247 Ariz. 495, 505, ¶ 26 (App. 2019).

**¶8** Under the UCCJEA, Arizona has jurisdiction over child custody matters when Arizona qualifies as the home state. A.R.S. § 25-1031(A)(1), (B). As pertinent here, the home state is where "a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding, including any period during which that person is temporarily absent from that state." A.R.S. § 25-1002(7)(a). This court has interpreted the six-month requirement as follows:

We hold that "home state" for purposes of determining initial jurisdiction under § 25-1031(A)(1) is not limited to the time period of "six consecutive months immediately before the commencement of a child custody proceeding[.]" A.R.S. § 25-1002(7)(a). Instead, the applicable time period to determine "home state" in such circumstances is "within six months before the commencement of the [child custody] proceeding." A.R.S. § 25-1031(A)(1).

*Welch-Doden*, 202 Ariz. at 208–09, ¶ 33 (concluding that although the child lived in Arizona for four months immediately before the child custody proceeding, Oklahoma was the home state because the child lived there for six consecutive months before moving to Arizona). Only when no state qualifies as the home state may a court consider other "substantive factors" for determining jurisdiction. *Id.* at 208, ¶ 31.

### A.    Evidentiary Hearing

**¶9**         Father argues the superior court abused its discretion and violated his due process rights by failing to conduct an evidentiary hearing to determine where Child lived. Citing *Volk v. Brame*, 235 Ariz. 462 (App. 2014), Father claims an evidentiary hearing is needed to resolve disputed facts. *Id.* at 464, ¶ 2 ("It is fundamental to due process that a court provide a forum for witness testimony, and that it refrain from resolving matters of credibility on documents alone.").

**¶10**        Before an Arizona court "conducts a proceeding concerning legal decision-making or parenting time," the court "first must confirm its authority to do so to the exclusion of any other state [or] Indian tribe . . . by complying with the [UCCJEA]." A.R.S. § 25-402(A). This directive is in force whether Arizona or another state or tribe is the first to begin a custody proceeding. *See Welch-Doden*, 202 Ariz. at 211, ¶¶ 46–47.

**¶11**        The superior court's dismissal order listed several undisputed facts but did not make findings about the disputed facts. Critically, the parties dispute where Child lived in the months preceding the filing of Father's petition. The superior court merely repeated the parties' allegations: (1) Mother "alleges that the minor child lived 'primarily' at Tuba City, Navajo Nation, and that she has not lived for a period of at least six (6) consecutive months in the state of Arizona"; and (2) Father "alleges that the minor child has lived the 'clear majority' of her life in Arizona." In doing so, the court failed to resolve the factual disputes that dictate the home state and the court's jurisdiction under the UCCJEA.

¶12            Instead, the superior court held that Father's failure to appear at the rescheduled hearing in the Navajo Court "constitute[d] a waiver" of his objections to the final order of protection, which included a child custody order.  The superior court also concluded that the Navajo Court had "jurisdiction [] 'substantially in accordance' with the UCCJEA provisions," because the Navajo Court "afforded due process" to Father. The superior court concluded that A.R.S. § 25-1036(B) mandated dismissal of the child custody petition and all related matters.

¶13            The superior court failed to recognize what § 25-1036(B) requires as jurisdiction "substantially in accordance with this chapter."  The chapter referenced is Arizona Revised Statutes title 25, chapter 8 — the UCCJEA.   And the UCCJEA unequivocally "prioritizes home state jurisdiction."  9 Unif. L. Annotated 650–51 (1999); *see Welch-Doden*, 202 Ariz. at 208, ¶ 30.

¶14            The UCCJEA does not expressly require an evidentiary hearing on a child's home state.   However, a court must determine "whether the *factual circumstances* [] are in substantial conformity with UCCJEA's jurisdictional standards" based on "*evidence* related to the location of [a child]'s residence with a parent or a person acting as a parent." *Holly C.*, 247 Ariz. at 513, ¶ 55 (citation modified) (emphasis added).  When facts are undisputed, a hearing to determine the home state is not necessary. *See Kubal v. Anderson*, 8 N.W.3d 811, 815, ¶ 7 (N.D. 2024) (affirming the trial court's ability to determine the home state based on undisputed facts); *cf. Madison C. v. Marwil*, 255 Ariz. 244, 249, ¶ 25 (App. 2023) ("Arizona courts interpret uniform laws consistently with sister jurisdictions.").  But when "a court's jurisdictional determination rests on disputed facts, . . . we accept the court's findings if reasonable evidence and inferences support them." *Holly C.*, 247 Ariz. at 505, ¶ 26.

¶15            Without findings, we have nothing to accept or affirm.  *See Anthony v. Wilkins*, 1 CA-SA 15-0237, 2015 WL 5619371, at *2, ¶ 4 (Ariz. App. Sept. 24, 2015) (mem. decision) (vacating a child custody order and directing the superior court to make specific findings of fact and conclusions of law about the child's home state in accordance with A.R.S. §§ 25-402 and -1031).  Mother acknowledged that where Child lived was disputed and asked the superior court to set an evidentiary hearing. Instead, the court concluded it could rule "[b]ased on the pleadings."

¶16            The North Dakota Supreme Court addressed a similar issue in *Schirado v. Foote*, 785 N.W.2d 235 (N.D. 2010).  A non-Indian father presented a custody claim in state court.  *Schirado*, 785 N.W.2d at 236, ¶ 2.

The mother, an enrolled member of an Indian tribe, lived at her university in North Dakota. *Id.* The child lived with the maternal grandparents on an Indian reservation; the mother visited the child on the weekends. *Id.* The mother moved to dismiss the father's state court action for lack of subject matter jurisdiction and later petitioned the tribal court for custody. *Id.* at 237, ¶ 3. The tribal court granted her temporary custody. *Id.* The state's trial court dismissed the father's custody case, finding the Indian reservation was the home state. *Id.* at 237–38, ¶ 6. The North Dakota Supreme Court vacated the dismissal order because the trial court failed to make express factual determinations on where the child lived, and with whom, to support its home state designation. *Id.* at 239–41, ¶¶ 13–16.

¶17 Here, the superior court erred by failing to decide under the UCCJEA whether Arizona has jurisdiction over this child custody matter, based on the child's home state. And whether Mother petitioned the Navajo Court first or whether Father failed to appear in the Navajo Court does not affect the legal analysis of home state determination. *See Welch-Doden*, 202 Ariz. at 211, ¶¶ 46–47 (concluding that jurisdiction is based on the home state determination, not a first-in-time determination); *C.L. v. Z.M.F.H.*, 18 A.3d 1175, 1177–79 (Pa. 2011) (noting that a father's failure to appear in tribal court did not affect the jurisdictional determination between a tribal court and a state court).[1]

### B. Conference with the Navajo Court

¶18 Father contends the superior court abused its discretion and violated his due process rights by failing to hold an inter-court conference with the Navajo Court to address home state jurisdiction. The UCCJEA directs the superior court, "before hearing a child custody proceeding," A.R.S. § 25-1036(B), to examine pleadings and affidavits detailing where and with whom a child has lived for the last five years, and whether a custody proceeding has begun in another state, A.R.S. § 25-1039(A).

¶19 Mother moved to dismiss Father's petition because Arizona lacked subject matter jurisdiction, or alternatively, because Arizona is an inconvenient forum. At that point, the superior court learned of the

---

[1] Mother has not argued that the superior court should defer to the Navajo Court as a matter of comity. *See Holly C.*, 247 Ariz. at 513–14, ¶¶ 56–58.

ongoing custody proceeding in the Navajo Court.[2]  The UCCJEA provides that when a child custody proceeding has commenced in a court in another state having "jurisdiction substantially in accordance with" the UCCJEA, an Arizona court "shall stay its proceeding and communicate" with the competing court addressing the same child custody matters.  A.R.S. § 25-1036(B).  Such inter-court communication is often called a UCCJEA conference.  *See, e.g.*, *Tracy D. v. Dep't of Child Safety*, 252 Ariz. 425, 428, ¶ 7 (App. 2021).

**¶20**        The Navajo Court awarded Mother temporary physical custody and ordered Father to pay child support, which means a child custody proceeding had commenced.  *See* A.R.S. § 25-1036(A).  But whether the competing court has "jurisdiction substantially in accordance with" the home state designation remains in dispute.  *See* A.R.S. § 25-1036(B).  Thus, at this point in the proceedings, a UCCJEA conference is not required.  *See id.*  Given the simultaneous proceedings, the superior court should have stayed, rather than dismissed, Father's petition to resolve the disputed facts underlying the home state designation and determined whether the Navajo Court had jurisdiction "substantially in conformity" with the UCCJEA.

### C.        Inconvenient Forum

**¶21**        As an alternative argument, Mother requested that the superior court decline jurisdiction because Arizona is an inconvenient forum.  In its dismissal order, the superior court explained that the Navajo Court had not declined jurisdiction.  Because the superior court then determined that Father waived his objection to the Navajo Court's child custody order, the superior court did not analyze the relevant factors for an inconvenient forum determination.  *See* A.R.S. § 25-1037(B)(1)–(8).

---

[2]        Father filed his petition for dissolution the day after Mother served him with her petitions from the Navajo Court.  Father marked "No" where the form petition asked if he was a party in another court case about custody, legal decision-making or parenting time.  He also marked "No" when asked if another court case could affect his claim for legal decision-making or parenting time.  He claims he "had prepared the documents" earlier; regardless, he misled the superior court by stating, under oath, that no other court had begun proceedings.  The record does not reveal whether Mother sought sanctions against Father under Arizona Rule of Civil Procedure 11(b)–(c) or Arizona Rule of Family Law Procedure 26(b)–(c).

¶22 Father argues the superior court abused its discretion and violated his due process rights by failing to hold an evidentiary hearing on the inconvenient forum factors. But an inconvenient forum analysis is pertinent only after determination of Child's home state. A.R.S. § 25-1037(A) (explaining that a court "that has jurisdiction under this chapter"—primarily home state jurisdiction—may decline to exercise its jurisdiction if it is an inconvenient forum). Absent a home state determination, any analysis of the inconvenient forum factors is premature.

## II. Marital and Property Issues

¶23 Father asserts the superior court abused its discretion by declining "to exercise or retain jurisdiction over the parties' marital status and related property and debt issues." The court dismissed Father's claim for divorce and property settlement, referring to the principles of judicial economy and inconvenient forum.

¶24 "When a married couple with children divorces, a court may be asked to resolve three sets of issues: (1) dissolution of the marriage; (2) child custody and visitation; and (3) financial questions including spousal maintenance, child support, and allocation of marital property and debt." *Taylor v. Jarrett*, 191 Ariz. 550, 552, ¶ 6 (App. 1998). Different jurisdictional standards govern these three categories. *Id.* As explained above, jurisdiction over child custody issues is determined by the UCCJEA. A.R.S. § 25-1031(A). Jurisdiction over the dissolution of marriage and property is defined by statute. A.R.S. § 25-312(A) (requiring 90-day domicile of at least one spouse before the filing of a petition for dissolution). And jurisdiction over child custody issues does not necessarily dictate jurisdiction over the marital or property issues. *See, e.g.*, A.R.S. § 25-1037(D) (explaining that an Arizona court may decline to exercise jurisdiction over a child custody determination on an inconvenient forum basis while "still retaining jurisdiction over the divorce").

¶25 Generally, we "will not overturn the [superior] court's ruling on the application of *forum non conveniens* absent an abuse of discretion." *Parra v. Cont'l Tire N. Am., Inc.*, 222 Ariz. 212, 214–15, ¶ 8 (App. 2009). Failure to balance the relevant inconvenient forum factors is error. *Id.* at ¶¶ 8–10 (listing the factors and balancing tests required to find an inconvenient forum in a civil dispute). When a party seeks an inconvenient forum determination in an action involving child custody matters, the superior court must consider the factors provided in the UCCJEA. A.R.S. § 25-1037(B) (outlining eight factors for an inconvenient forum analysis). Before deciding Arizona is an inconvenient forum, a court "must consider

all factors listed in A.R.S. § 25-1037(B) and any other relevant factor and make appropriate findings on those factors." *Hubert v. Carmony*, 251 Ariz. 531, 535, ¶ 14 (App. 2021). The superior court did not do so here, and thus the court erred in summarily declining to exercise its jurisdiction over the marital and property issues, which could remain in the superior court for resolution.

## CONCLUSION

¶26 We vacate the superior court's dismissal order and remand for the court to determine the Child's home state, address the A.R.S. § 25-1037(B) factors, and make required findings. In our discretion, we deny Father's request for attorneys' fees asserted under A.R.S. § 25-324.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**: JR